MINNIE ABELN v. IOWA MUTUAL LIABILITY
INSURANCE COMPANY.[1]

November 29, 1940.

No. 32,498.

*Freeman & King* and *Charles P. Le Richeux,* for appellant.
*Moonan & Moonan,* for respondent.
*H. A. Irwin, Francis G. Thompson, E. E. Komarek,* and
*John A. Burns, amici curiae.*

HOLT, JUSTICE.

John Abeln, the husband of plaintiff, on September 22,
1938, received defendant's policy, premium prepaid, insuring

[1]Reported in 295 N. W. 54.

him for one year against loss from collision or upset of his Chevrolet car. The insured died April 29, 1939, at his home in Shakopee, this state. Capesius, the agent of defendant who had procured this insurance policy, lived two blocks from the home of the deceased and knew of the latter's death on the day or the day after it happened. Apparently the estate of the insured was of such character that a summary administration was had, a final decree of distribution being entered by the probate court of Scott county on June 6, 1939, awarding the insured car to plaintiff. On October 10, 1938, defendant had cancelled Capesius' agency contract, but no notice was given thereof to defendant's policyholders in the agent's territory. However, Capesius was to continue "to service" the policies that defendant kept in force. About June 28, 1939, it was agreed between Capesius and Mr. Wride, in charge of defendant's agencies, that the insured's policy on the Chevrolet should be replaced on July 10, 1939, by a policy in another insurance company of which Capesius was agent. Shortly after June 6, and before June 15, 1939, John C. Abeln, plaintiff's son and agent, who was driving the Chevrolet, inquired of Capesius whether the insurance on the car was in force and was assured that it would be until July 10, 1939, when it would be replaced by a policy in another company. Plaintiff relied on the information thus given. On July 2, 1939, while the Chevrolet was being driven by John C. Abeln, with plaintiff's consent, there was a collision or upset wherein it was damaged to such an extent that $350 would be due under the terms of the policy mentioned. Capesius notified defendant of the mishap the day it occurred. On the next day, after investigating the accident, defendant gave written notice that the policy would be cancelled as of July 10, 1939, and $8.08 of the prepaid premium returned upon demand. That is, defendant retained the full premium up to July 10, 1939. Findings and conclusions of law were made in favor of plaintiff. Defendant's motion for amended findings of fact

and conclusions of law was denied, and this appeal is from the judgment.

There was no motion for a new trial; but the many assignments of error challenge certain essential findings of fact as not sufficiently sustained by the evidence. There is no occasion to consider the numerous findings and parts of findings which defendant moved to amend or strike out as being immaterial to the issues in the case, for immaterial findings of fact do not affect or control the conclusions of law. The findings of fact are unnecessarily prolix and lengthy, the ones challenged as without support being findings of fact numbered 18, 20, 21, 22, 23, 25, and 26. We need not consider them separately. However, they may be considered in connection with what defendant terms the crux of the appeal.

The policy is in evidence, and the two paragraphs thereof upon which defendant so much relies are incorporated in the findings. The one here of importance is No. 17 reading:

"No assignment of interest under this policy shall bind the company until its consent is endorsed hereon; if, however, the named insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless canceled, shall, if written notice be given to the company within thirty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2) subject otherwise to the provisions of paragraph III, any person having proper temporary custody of the automobile, as an insured, until the appointment and qualification of such legal representative, but in no event for a period of more than thirty days after the date of such death or adjudication."

The eighteenth finding is the paragraph in the policy respecting cancellation, which need not be set out. It is enough to state that the notice of cancellation mailed to the insured July 3, 1939, naming July 10, 1939, as the effective

date, complied with the provision of the policy, and there was no violation by defendant in retaining the $8.08 unearned premium until demand thereof. The important point is in taking the premium up to July 10, 1939. It is true that the provision of finding No. 17, above quoted, is binding, and that it terminated the policy at the expiration of 30 days after the insured's death, unless what was done by representatives of defendant had the effect of making plaintiff the insured up to July 10, 1939. When the policy was procured by John Abeln, Capesius was the general agent of defendant, but it must be conceded that he had no authority to waive any provision in the terms of the policy as written. It insured John Abeln and no one else. It is a general rule that a contract of insurance may not be extended either as to coverage or parties by waiver. Usually the doctrine of waiver in such contracts is applicable to breaches after the insurance is effected or, after loss, to conditions precedent to suit. Here there was no endorsement authorizing transfer of the insured car to plaintiff. No representative of John Abeln's estate was ever appointed, and more than 30 days had elapsed since his death before the collision or upset. Capesius had no authority from defendant to procure insurance for plaintiff in June, 1939. But the evidence supports these facts contained in the findings challenged: Capesius was defendant's agent for "servicing" the policies of insurance defendant had in force or chose to keep in force in Scott county. Mr. Wride of Minneapolis was defendant's representative in charge of its agencies in the south half of Minnesota. He frequently visited Capesius, and was instructed to do so when Capesius' agency was terminated. He visited Capesius the first part of May and again on June 28, 1939, when they went over the policies in force and Mr. Wride took a list of those that were to remain in force. On this list was Abeln's policy on the Chevrolet which was to continue in force until July 10, 1939. John C. Abeln, for plaintiff, saw Capesius about June 10, 1939, after the probate

court had decreed the insured car to plaintiff, and inquired whether it was covered and was assured that it was. Plaintiff testified that her son was acting for her; that Capesius had been to her "house and he said everything would be all right twice to me. I should not worry." It appears that Abeln also had a Pontiac car on which the insurance would expire June 15, 1939, and that Capesius was informed that it was intended to sell the Pontiac, so no insurance would be needed on that; but that Capesius was also informed that it was intended to keep the Chevrolet policy in force, and "he said the policy would be good until he gave a new policy on July 10, 1939." This of course would not be sufficient to bind defendant, Capesius' authority as agent to procure insurance for defendant having been theretofore ended. However, when Capesius, on July 2, 1939, after the 1939 Chevrolet had upset, notified defendant thereof, it sent an agent to Shakopee to investigate the accident, who reported to Mr. Wride's office in Minneapolis. Thereafter, and on July 3, 1939, having obtained full knowledge of the situation, defendant mailed written notice of cancellation of the Chevrolet policy to take effect on July 10, 1939, as Capesius and Wride had agreed on June 28, and it elected to retain the premium up to that date. Capesius was a witness, but he does not in the slightest dispute plaintiff's or her son's testimony. Mr. Wride was not a witness. His home was only 30 miles from the place of trial. The trial court might well conclude that Mr. Wride knew, on June 28, 1939, when the notation was made on the list of the policies outstanding in Capesius' agency, that the policy on the Chevrolet should be continued in force until July 10, and that John Abeln had been dead since the last of April and that plaintiff was the owner of the Chevrolet. With that knowledge, defendant ratified Capesius' agreement with plaintiff by giving notice of cancellation of the policy and charging and retaining the premium up to July 10, the date agreed by Wride and Capesius for continuance of the policy. In the trial court's

memorandum attached to the findings the controlling facts are summarized as follows:

"We have the fact that Capesius and his superior, the man in charge of the state of Minnesota, discussed this policy on June 28 and agreed that it be kept in force until July 10. We have the admitted fact that plaintiff's son, acting for her, inquired of Capesius with reference to the validity of the insurance, and we have the admitted assurance of Capesius that the insurance was in force and would be kept in force for plaintiff's protection until July 10, when a new policy would be issued. After all this was done and when defendant knew all the facts, it elected to cancel the policy as of July 10 and claim as earned the premium to July 10," which it still retains.

That is the substance of the facts contained in the challenged findings. We think the cases in this court of Baughman v. Niagara F. Ins. Co. 163 Minn. 300, 204 N. W. 321, and Forney v. Farmers Mut. F. Ins. Co. 181 Minn. 8, 231 N. W. 401, sustain a recovery here. So do the following decisions in other jurisdictions: Orient Ins. Co. v. Peacock, 115 Fla. 525, 155 So. 724; Goldman v. Indemnity Ins. Co. (Mo. App.) 72 S. W. (2d) 866; Home F. Ins. Co. v. Kuhlman, 58 Neb. 488, 78 N. W. 936, 76 A. S. R. 111; Gelczis v. Preferred Acc. Ins. Co. 12 N. J. Misc. 232, 171 A. 144; New Jersey Rubber Co. v. Commercial U. A. Co. 64 N. J. L. 580, 46 A. 777.

The judgment is affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part.