F. H. NICHOLS, Appellee, v. HAWKEYE CASUALTY COMPANY, Appellant.

No. 46281.

JULY 27, 1943.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellant.

Bennett Cullison, of Harlan, for appellee.

MULRONEY, C. J.—In this suit upon an automobile accident policy it was admitted that the defendant issued the policy to the plaintiff, obligating the defendant to pay plaintiff's liability for damages because of the operation of a certain Plymouth automobile. It is also admitted that one Sydney Dinges recovered a judgment for $1,000 against plaintiff for injuries sustained when the car ran over his foot. Plaintiff sought recovery of $1,000, the amount of the Dinges judgment, $800 attorney's-fee expenses incurred by the plaintiff in defending the Dinges suit, and $200 additional expenses in connection with the defense of the suit. Defendant denied that it was chargeable for the expense items and alleged it was not liable for the amount of the $1,000 judgment because at the time of the accident to Dinges, and immediately before and thereafter, the plaintiff was "using said automobile for business or commercial purposes, and that said automobile at the time and immediately before and immediately thereafter was not being used as a pleasure and family business automobile," within the terms of the policy.

A jury being waived, trial was had to the court, which rendered judgment in favor of the plaintiff for the full amount of the Dinges judgment and $500 attorney's-fee expenses.

The record shows that plaintiff was engaged in the trucking business with his father in Corning, Iowa, under the firm name of A. P. Nichols & Son, and on the morning of July 26, 1941, he drove to the outskirts of Harlan, where their trucks were hauling gravel from the railroad yard. In order to facilitate the unloading of the railroad car of gravel onto the trucks, a slip scraper was fastened to the Plymouth car by a cable. The Plymouth car

would then pull the scraper from one end of the car to a chute leading to the truck and thus dump a load of gravel into the truck. The place in the railroad yards where the unloading operation was carried on was a wide space between the tracks where vehicles were driven for the purpose of unloading railroad cars. Dinges, a railroad conductor, requested plaintiff to remove the cable from the Plymouth, as they wished to spot a refrigerator car on the siding north of the gravel car. Plaintiff unhitched the cable and threw it in the gravel car and then drove the Plymouth into Harlan. He drove back sometime later and parked his car near the track. After the refrigerator car was spotted, about a half to one hour later, the gravel car was put back near its previous location. Plaintiff then backed his car to get out of the way of a truck and also so he would be in a position to hitch up the cable again. In backing up, plaintiff ran over Dinges' foot, causing the injuries for which Dinges sued plaintiff and recovered the $1,000 judgment.

Defendant's assignment of error consists in the refusal of the court to dismiss plaintiff's petition (1) because the provisions of the policy had become inoperative due to the unauthorized or uninsured use of the Plymouth sedan automobile, and (2) because plaintiff at the time of the accident was using said Plymouth automobile for business or "commercial purposes" as distinguished from "pleasure and family business."

The policy contained the following paragraph, under the heading of "Representations" and designated as Item V, to wit:

"The purposes for which the automobile is to be used are— Pleasure and Family Business.

"(a) The term 'pleasure' is defined as personal pleasure and family business use. (b) The term 'pleasure and business' is defined as personal pleasure, family and occasional business use. (c) The term 'business' is defined as any use not included in Classes A or AB. Classes A, AB and B are applicable only to automobiles of the private passenger type. (d) The term 'commercial' is defined as the transportation or delivery of goods or merchandise, and other business used in direct connection with the assured's business occupation as expressed in Item I, including occasional pleasure use for the named insured and fam-

ily. (e) Use of the automobile for the purpose stated includes the loading and unloading thereof.''

Defendant contends in argument that the use of the car at the time of the accident was commercial and unauthorized in that it was being used to furnish motive power to further the business of A. P. Nichols & Son. Counsel cites several cases where the commercial use of insured vehicles at the time of an accident prevented recovery under policies providing for similar permitted use. We do not deem it necessary to discuss these authorities. The trial court held the use of the car was not commercial or unauthorized at the time of the accident, and we think it was right. Even if we assumed that the use of the car to supply motive power for the slip was not a permitted use, we could not, under this record, hold that at the time plaintiff backed over Dinges' foot he was engaged in such use of his car. He was not pulling the slip at the time of the accident. In all the cases cited by defendant, where liability was denied, actual use of the vehicle contrary to the policy at the very instant of the accident was present. The record shows plaintiff had used his car to pull the slip; that he then drove to Harlan, and came back sometime later; that he was parked for a time near the track; that he backed his car to get out of the way of a truck and also to get into a position to hitch up the cable again. It was while backing up to commence the alleged unauthorized use that the accident occurred. The trial court in its written decision stated:

''Under these facts it seems to the court that the use of said car at the time of the accident and injury was not illegal, was not unauthorized, and not such use as would make said car uninsured under the policy in suit, for, if the argument be carried to its logical conclusion, that, because an illegal or unauthorized use had been made at *some* time of an insured automobile, an injury sustained by reason of a use *thereafter*, not illegal or unauthorized, would vitiate the policy, it results in an absurdity, because the logical conclusion therefrom would be that if you could depart from the unauthorized use for one minute, five minutes, and a half hour, and still claim that the policy had been vitiated by

such former unauthorized use, or an intent thereafter to make an unauthorized use, and destroy the time element entirely, then such defense would be open to an insuring company for a claimed unauthorized use occurring even as far as days, weeks and months prior to the time of the accident, and it seems to the court that such contention would be absurd.''

We feel that the reasons advanced by the trial court for its conclusion are most persuasive. Of course, the movement of the car at the time of the accident was at least partly with the intention of engaging in the alleged unauthorized use. But this was the same intention that influenced the movement of the car all the way back from Harlan.

In Maryland Casualty Co. v. Aguayo, D. C., Cal., 29 F. Supp. 561, 564, a somewhat similar situation existed when the injury occurred after a concrete mixer had been towed to certain premises. The injury occurred, while the mixer was still attached to the truck, by reason of the end-gate of the truck falling on a person's hand. In holding the company liable the court stated:

''It will be observed that the policy excludes liability 'while the automobile *is used for the towing* of any trailer.' (Italics ours.) The stipulation of facts shows clearly that the insured truck and the concrete mixer had arrived at their destination. The concrete mixer had been delivered and was no longer being towed at the time of the injury here involved. The word 'towing' signifies movement. * * * It is clear from the stipulated facts that at the time of the accident no towing was taking place, within the meaning of the policy.''

We cannot read into the policy a prohibition against the movement of the car for an intended unauthorized use, nor can we attach to Clause V the import of annulling the protective features of the insurance when the prohibited use is not actually occurring at the time of the accident. The liability under the policy is determined by use, not intention to use.

Because we hold that the evidence does not show an unauthorized use at the time of the accident, it is unnecessary to consider whether the representation as to use constituted a warranty and whether an occasional use could avoid the protection under the

policy.   We find no error in the decision of the trial court and the same is affirmed.—Affirmed.

GARFIELD, BLISS, MILLER, OLIVER, WENNERSTRUM, MANTZ, and HALE, JJ., concur.