RITEWAY CARRIERS, Inc. v. STUYVE-SANT INS. CO.

Civ. A. No. 4330.

United States District Court
D. Minnesota, Fourth Division.

Aug. 4, 1953.

Harding A. Orren, of Robins, Davis & Lyons, Minneapolis, Minn., for plaintiff.

Irvin E. Schermer, of Schermer & Gensler, Minneapolis, Minn., for defendant.

JOYCE, District Judge.

This matter is here upon defendant's motion for vacation of a judgment previously entered herein upon a verdict for plaintiff and alternatively for judgment notwithstanding the verdict or for a new trial.

The action was brought by plaintiff upon a policy of collision insurance issued by defendant which described a certain Fruehauf seim-trailer. Defendant among other asserted defenses claimed it had no liability for the loss by reason of a lack of insurable interest in the person to whom the policy was originally issued and that, since the trailer at the time of loss was subject to chattel mortgages executed subsequent to the issuance of the policy and not endorsed thereon, coverage was suspended under the following provision of the policy:

"Exclusions

"This policy does not apply: * *

"(b) under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy: * * *."

The parties concede that upon the evidence the following facts are undisputed. Prior to the delivery of the present policy the defendant through its general agent, A. R. Krawetz, issued a policy of collision insurance to Kenal Trucking Company covering nine semi-trailers, among them being the Fruehauf trailer here involved. A loss payable endorsement to Fruehauf Trailer Company as its interest might appear was attached to the policy. The interest of Fruehauf as conditional vendor was not specifically described in the endorsement but Krawetz knew that it had a lien interest of some kind.

Kenal Trucking Company ceased doing business and its substantial owner, Kenneth Oskey, became the owner of the trailers but as a matter of convenience had the company assign the Minnesota motor vehicle registration to his wife Dorothy Oskey. The aforementioned policy was cancelled by defendant but shortly thereafter Krawetz in response to Mr. Oskey's request issued a new policy on the trailers naming Mrs. Oskey as the insured, with a loss payable endorsement as before.

On May 4, 1952, after the policy was issued, Oskey executed a bill of sale transferring the nine trailers to the plaintiff, Riteway Carriers, Inc., which he had caused to be incorporated, and later, on July 20th, Mrs. Oskey transferred the registration cards to that corporation.

On May 6, 1952, plaintiff gave a chattel mortgage covering the nine trailers and certain other equipment to National Finance Company to secure payment of $25,-000. Thereafter plaintiff acquired a diesel tractor and as part of the financing arrangements therefor executed another separate and distinct chattel mortgage, dated May 12th, to the same mortgagee which included in addition to the newly acquired unit the nine trailers previously mortgaged. On May 28th the policy was amended by endorsement substituting plaintiff for Mrs. Oskey as the named insured. On June 10th still another mortgage was given to the same mortgagee covering the previously mortgaged items and three additional pieces of equipment.

The trailer in question was damaged in a collision on July 1, 1952 and upon defendant's refusal to pay the loss this action was instituted and a verdict returned for plaintiff.

Defendant contends it is entitled to judgment notwithstanding the verdict because when the policy was originally issued the named insured, Mrs. Oskey, had no insurable interest and the policy being wholly void plaintiff as the substituted insured acquired no greater rights under the policy.

The registration of the vehicle under M.S.A. c. 168 in the name of Mrs. Oskey was of course only prima facie and not conclusive evidence of her title and ownership. Holmes v. Lilygren Motor Co., Inc., 201 Minn. 44, 275 N.W. 416; Flaugh v. Egan Chevrolet, Inc., 202 Minn. 615, 279 N.W. 582. It may well be that such prima facie showing was completely dispelled by Mr. Oskey's testimony that the registration was for convenience only and that in substance Mr. Oskey remained the owner. However, there can be no question but that the plaintiff here had an insurable interest at the time it was substituted as named insured and at the time of the loss. Having consented to such substitution, the defendant waived the prior illegality and validated the policy. Rines v. German Insurance Co., 78 Minn. 46, 80 N.W. 839.

Defendant also asserts it is entitled to judgment because, at the time of loss, coverage under the policy was suspended under the policy provison set out supra, by reason of the execution of the chattel mortgages, particularly the mortgage of June 10, 1952.

It appears that a provision against encumbrances is not unreasonable nor contrary to public policy and accordingly is valid and binding upon the parties. See the cases collected in Note, 16 A.L.R.2d 736.

The exclusion clause here involved must be distinguished from others which provide that the policy shall be void if the property be encumbered. Such provision providing for forfeiture may of course be waived by the insurer who with knowledge of the facts takes any action thereafter which would only be consistent with the continued existence of the contract, such as the acceptance of premiums or the refusal or failure to return unearned premiums.

But the provision in the present policy merely provides for the suspension of coverage while the property is encumbered. The insured had a right to encumber the property and its action in so doing did not breach the contract nor give rise to a right or power in the insurer to declare or claim a forfeiture. The clause in fact relates to the extent of coverage and is part of the insuring agreement. Hargett v. Gulf Ins. Co., 12 Cal.App.2d 449, 55 P.2d 1258; Bridgewater v. General Exchange Ins. Co., 234 Mo.App. 335, 131 S.W.2d 220; Rifkin v. Stuyvesant Insurance Co., 240 App.Div. 540, 270 N.Y.S. 630. The risks assumed by the insurer and the consequent extent of coverage may be defined by exclusion as well as inclusion. Giacomo v. State Farm Mutual Auto Ins. Co., 203 Minn. 185, 280 N.W. 653.

The application of the exclusion clause to mortgages executed subsequent to the issuance of the policy is apparently conceded and in any event has not been made an issue here although there appears to be authority for the proposition that it has no such application. See Fink v. Lumbermens Mut. Casualty Co., 172 Pa.Super. 533, 93 A.2d 882.

It appears that the suspension of coverage could have been avoided by the attachment of a proper endorsement. Absent such endorsement, the three separate and distinct chattel mortgages to National Finance Company being admitted, the defendant is entitled to judgment unless there is evidence in the case sufficient to have permitted a finding by the jury that the insurer was precluded from depending or insisting upon the terms of the policy.

In this regard the evidence indicates that National Finance Company by letter dated May 19, 1952 informed Krawetz that it held a chattel mortgage dated May 6, 1952 on certain described vehicles of Riteway Carriers, Inc. which were subject to a prior lien, and requested the issuance of a certificate with loss payable clause in its favor. Without detailing the conflicts in the testimony the evidence most favorable to plaintiff indicated that Krawetz knew this letter related to the trailer here in question and that Mr. Oskey saw the letter during May, 1952. At that time Krawetz asked Oskey what he should do and Oskey testified:

"I told him that Fruehauf Trailer naturally has the first mortgage and if they (National Finance Company) wish a loss payable clause sent to them I suppose it would be the right thing to do to send them one."

"We discussed it (the letter) and I suggested that they had been pretty good to us and I said, 'I think we ought to abide by their request'."

There is no evidence of any response to the above on the part of Krawetz.

The evidence was not sufficient to sustain a finding that the above conversation related to any mortgage other than that of May 6th. Mr. Oskey's own testimony indicates that he did not know whether he discussed the mortgages of May 12th and June 10th with Krawetz and he admitted he had no reason to discuss them because Krawetz only carried insurance on the nine Fruehauf trailers and he himself did not understand that the two subsequent mortgages involved those trailers. The letter in question did not mention either mortgage and it was written and the conversation took place prior to the June 10th mortgage.

The only other evidence bearing on the question was Oskey's testimony to the effect that he "probably" discussed the June 10th mortgage with Krawetz and upon further interrogation:

"I can't say yes or no. He knew as much about our business as you do, right now in fact."

■ As previously indicated the exclusion provision relates to coverage and "it is a general rule that a contract of insurance may not be extended either as to coverage or parties by waiver." Abeln v. Iowa Mutual Liability Ins. Co., 208 Minn. 582, 585, 295 N.W. 54, 56; Mahne v. American Fraternal Union, 216 Minn. 303, 12 N.W.2d 615; Draper v. Oswego County Fire Relief Ass'n, 190 N.Y. 12, 82 N.E. 755; and see Note, 113 A.L.R. 857.

■ Even in the absence of such rule the evidence here is insufficient to establish waiver. A waiver arises when a party in full possession of the facts relinquishes a known right. Schreiber v. German-American Hail Ins. Co., 43 Minn. 367, 45 N.W. 708. Any finding that the defendant or its agent Krawetz had knowledge of the mortgages dated May 12th or June 10th would necessarily be based upon speculation and conjecture.

The same rule preventing extension of coverage by waiver has been held to prevent a claim of estoppel. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 101 F.2d 739; Adalian's, Inc., v. Fidelity-Phenix Fire Ins. Co., 5 Cir., 81 F.2d 226; Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854. There are cases to the contrary. Beatty v. Employers' Liability Assur. Corp., 106 Vt. 25, 168 A. 919; Ellis v. Metropolitan Casualty Ins. Co., 187 S.C. 162, 197 S.E. 510; see Draper v. Oswego County Fire Relief Ass'n, supra.

It does not appear that there is any direct Minnesota authority on this question. Cf. Wold v. State Mutual Life Assur. Co., 198 Minn. 451, 270 N.W. 150. But even if Minnesota law would permit an estoppel in a proper case it is not available to the plaintiff here. The issuance of an endorsement describing the mortgages would have prevented the suspension of coverage resulting from the execution of the mortgages there described and it might well be that an agreement to issue such endorsement would estop the insurer from relying on its failure to actually issue such endorsement. A request for a loss payable clause coupled with disclosure of the existence of the mortgages would apparently have the same effect. See Greenwood Market v. Insurance Co. of North America, D.C.S.C., 34 F.2d 53.

■ Here the evidence will not permit a finding that there was an agreement to issue a loss payable rider. Even if Oskey's statement to Krawetz can be interpreted as a request to issue such rider there is no evidence that Krawetz ever assented thereto. Since he had no duty to speak, Hargett v. Gulf Ins. Co., supra, his silence would not constitute assent. See Alexander v. General Ins. Co., D.C. Cal., 22 F.Supp. 157.

■ Furthermore, for the reasons previously indicated, if such agreement could be found it would relate only to the mortgage of May 6, 1952. The issuance of a loss payable rider with reference to that mortgage would not prevent the suspension of coverage resulting from the two

512

subsequent mortgages. Such rider in the usual form providing for distribution of the proceeds as the mortgagees' interest may appear relates only to the mortgage then in existence and does not contemplate subsequent mortgage interests. Attleborough Savings Bank v. Security Ins. Co., 168 Mass. 147, 46 N.E. 390. See Westchester Fire Ins. Co. v. Norfolk Bldg. & Loan Ass'n, 8 Cir., 14 F.2d 524. The words "as interest may appear" merely provides for the contingency of a reduction in the debt between the date of the policy and the date of loss. See Eagle Star & British Dominions v. Tadlock, D.C.Cal., 22 F.Supp. 545.

For the reasons set out above the defendant's motion for judgment notwithstanding the verdict must be and is sustained.

Accordingly it is ordered that the judgment heretofore entered be and the same hereby is set aside and vacated and that judgment be entered for the defendant herein.