The STATE AUTOMOBILE INSURANCE ASSOCIATION, a corporation, Plaintiff,

v.

William P. KOOIMAN, Gerrit Koster, Henry J. Brockhouse, Marie J. Lundeen, as Administratrix of the Estate of Melbourne E. Lundeen, Deceased, Sunshine Biscuits, Inc., a corporation, and Hartford Accident and Indemnity Company, a corporation, Defendants.

Civ. No. 1001.

United States District Court
D. South Dakota, S. D.

Aug. 7, 1956.

Deming Smith, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for plaintiff.

Louis H. Smith, Sioux Falls, S. D., and Benjamin Vander Kooi, Luverne, Minn., for defendant Wm. P. Kooiman.

Thomas J. Barron, Sioux Falls, S. D., and Robert Rice, of Palmer & Rice, Pipestone, Minn., for defendants Gerrit Koster and Henry J. Brockhouse.

Chandler L. Beach, of Royhl, Benson & Beach, Huron, S. D., for defendants Melbourne E. Lundeen and Sunshine Biscuits, Inc.

H. L. Fuller, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for defendant Hartford Accident and Indemnity Co.

MICKELSON, Chief Judge.

This is an action for declaratory judgment brought under the provisions of Title 28, Section 2201, U.S.C.A. Plaintiff is an Iowa corporation. The defendants are citizens of the states of Minnesota, South Dakota, New York and Connecticut, respectively, and the amount in controversy exclusive of interest and costs exceeds the sum of $3000.

The State Automobile Insurance Association, hereinafter referred to as State Auto, issued an automobile liability insurance policy to defendant William P. Kooiman effective March 26, 1953, for a six month period, which policy was renewed in substantially the same form on September 26, 1953, again on March 26, 1954, and on September 26, 1954. Kooiman is a farmer and cattle dealer residing at Edgerton, Minnesota. The policy covered a number of trucks and automobiles owned by the insured. Limits of liability were $25,000/$50,000/-$5,000. The agent who obtained this insurance for the assured and who countersigned the policy was Elmer Kooiman of Edgerton, Minnesota, a nephew of the assured.

The defendant Henry J. Brockhouse is a farmer and trucker living at Edgerton, Minnesota. The defendant Hartford Accident and Indemnity Company, hereinafter referred to as Hartford, issued to him a liability policy with limits of $20,000/$40,000/$5,000 covering a Ford truck and Diamond "T" tractor and a Fruehauf semi-trailer. This coverage became effective December 12, 1953, for a period of one year.

On or about October 11, 1954, the defendant Kooiman desired to transport some hay from Jerauld County, South Dakota, to his farm near Edgerton, Minnesota. Kooiman also owned a farm in Jerauld County, South Dakota, but it appears from the evidence that this particular hay had been purchased by him from other farmers in the vicinity of his South Dakota farm. Kooiman's semi-trailer was an enclosed livestock trailer not suitable for hauling hay. The defendant Brockhouse's semi-trailer was a flat-bed of the type well adapted for hay hauling. At this particular time Brockhouse's tractor was broken down. Brockhouse wanted to haul some flax straw to Windom, Minnesota. Kooiman and Brockhouse relate conflicting stories as to the details of the arrangement they made, but in any event, there is no dispute that on October 11, 1954, Brockhouse took his employee, the defendant Gerrit Koster, over to the Kooiman farm, where they picked up Kooiman's tractor, drove it back and hooked it onto the Brockhouse flat-bed semi-trailer and transported the load of flax straw to Windom. They returned to Edgerton, and later that day Koster started on his first trip to Jerauld County, South Dakota, to bring back a load of hay for Kooiman. One load was hauled on October 11th, and another load on October 12th. On October 13, 1954,

while Koster was driving the Kooiman tractor pulling the Brockhouse semi-trailer back to the South Dakota farm for another load of hay, at a point in Jerauld County, South Dakota, 121½ miles from Edgerton, Minnesota, by highway, or 114 miles in a straight line, the truck collided with an oncoming car owned by the defendant Sunshine Biscuits, Inc., and then being operated by Sunshine's salesman, Melbourne E. Lundeen. Lundeen was killed and Sunshine's car was badly damaged. Lundeen's administratrix has brought a wrongful death action against Kooiman, Koster and Brockhouse in the state court of Jerauld County, South Dakota, and Sunshine Biscuits, Inc., has brought another action in the same court to recover its property damage. With these actions thus pending, State Auto has brought this declaratory judgment action asking this Court to declare the rights and other legal relations existing between and among the parties hereto.

State Auto claims that it is not liable under the policy issued to Kooiman for two reasons: (1) because the accident occurred beyond the 50 mile radius from Edgerton, Minnesota, and there was no payment of an additional premium; (2) because the Kooiman tractor was being used for towing a trailer hired by the insured and was not covered by like insurance in State Auto.

It is conceded by all parties that the accident occurred 121½ road miles or 114 air miles from Edgerton, Minnesota, the town stated in the policy as the address of the insured.

As a basis for its first claim of non-liability herein, State Auto relies upon an endorsement forming a part of the policy which reads as follows:

"It is agreed that such insurance as is afforded by the policy does not apply to any accident, loss or damage arising out of the ownership, maintenance or use of any automobile to which such insurance applies unless such accident, loss or damage occurs within an area within a 50 mile radius of the city or town stated as the address of the named insured in the declarations except * * * upon payment of additional premium."

It should be noted that this endorsement does not prohibit trips beyond a 50 mile radius of the city or town stated as the address of the insured, so that the question of such provision being contrary to public policy is not here present. The endorsement merely predicates coverage upon the payment of additional premium if the automobile is used beyond the 50 mile radius. No additional premium was ever paid for this particular trip. Point 2 raised by State Auto will be discussed later in connection with a similar claim and policy provision contained in Hartford's policy.

Defendant Kooiman contends that State Auto is estopped to deny liability under the above quoted endorsement because the agent told him that the tractor would be, and was, covered at all times and in all places and under all conditions. State Auto's policy contains the following standard provision:

"20. Changes—Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Association from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the Attorney."

Here State Auto has expressly excluded coverage beyond a 50 mile radius except upon payment of additional premium. The general rule is that parties to an insurance contract may stipulate that its terms cannot be waived or changed except in a writing attached to or endorsed upon the policy, and such provisions are generally considered valid and binding upon the insured. Hartford Fire Insurance Co. v. Nance, 6 Cir., 12 F.2d

575; Adalian's, Inc., v. Fidelity-Phenix Fire Ins. Co., 5 Cir., 81 F.2d 226; Paulauskas v. Fireman's Fund Ins. Co., 254 Mass. 1, 149 N.E. 668; Mulrooney v. Royal Insurance Co. of Liverpool, England, 8 Cir., 163 F. 833.

In C. E. Carnes & Co. v. Employers' Liability Assurance Corp., 5 Cir., 101 F. 2d 739, 741, an automobile policy was issued in which the business of the insured was stated to be " 'Handling Farm Machinery, Crane Fixtures & Paints.' " The purpose for which the vehicle was to be used was stated to be the transportation of goods in direct connection with the assured's business occupation. It was undisputed that one year later when the policy was renewed, the agent knew that the assured was hauling butane gas on the truck. The Court held that the agent's knowledge did not bind the principal, as this would in effect create a new contract. The Court said:

"It is well settled that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action."

■ In the instant case the coverage is sought to be extended by the insured to include liability beyond the 50 mile radius without payment of additional premium. This risk was not included or contemplated by the terms of the policy, and the coverage may not be extended on the basis of waiver or estoppel because of knowledge by the agent of use beyond the express terms of the policy. C. E. Carnes & Co. v. Employers' Liability Assurance Corp., supra; Aetna Casualty & Surety Co. v. Hanna, 5 Cir., 224 F.2d 499. This is also the rule in South Dakota, Davenport v. Fireman's Insurance Co. of Newark, N. J., 47 S.D. 426, 199 N.W. 203; Amos v. Hardware Mutual Fire Ins. Co., 64 S.D. 434, 267 N.W. 336, and in Minnesota. Abeln v. Iowa Mutual Liability Ins. Co., 208 Minn. 582, 295 N.W. 54; Riteway Carriers, Inc., v. Stuyvesant Ins. Co., D.C., 114 F.Supp. 507.

■ We therefore find and hold that at the time of the accident involved herein, the Kooiman tractor was being used beyond the 50 mile radius of Edgerton, Minnesota, and that no payment of additional premium was made as required by the terms of the policy to extend the coverage beyond such radius, and that therefore such policy provided no coverage to Kooiman at the time of the accident here involved.

We pass now to a determination of the legal relationship between the defendant Hartford and the defendant Brockhouse as it existed at the time of the accident. In this determination, four questions must be answered:

(1) Was the Hartford "these units will be used exclusively for hauling the assured's own farm equipment and products" endorsement being violated at the time of the accident?

(2) Is Hartford estopped to deny liability by reason of certain knowledge of its agents acquired prior to the issuance of the policy?

(3) Is there any ambiguity in the endorsement when compared with the other provisions of the policy?

(4) Has Hartford by its conduct after receiving notice of the commencement of the action in state court waived its right to claim non-liability?

(1)

■ Under Question No. 1 above, Hartford's policy contains the following typewritten endorsement:

"It is understood and agreed that, in consideration of the premium charged for insurance on the 1948 Ford tractor (M)8EQ 11441 and the 1954 Fruehauf semi-trailer, (S) SF14863, these units will be used exclusively for hauling the assured's own farm equipment and products."

It is undisputed that the Brockhouse trailer was being used to haul the hay which was the property of Kooiman, so that it was not being "used exclusively for hauling the assured's own farm equipment and products." This endorse-

ment by its clear terms stated that coverage as to the tractor and trailer therein described would be provided only while they were being used exclusively for hauling the assured's own farm equipment and products. Where a policy limits the insurer's liability to a designated use of the insured's automobile, the insurance does not cover other uses. Giacomo v. State Farm Mutual Auto. Ins. Co., 203 Minn. 185, 280 N.W. 653; Gudbrandsen v. Pelto, 205 Minn. 607, 287 N.W. 116; Sunshine Mutual Ins. Co. v. Addy, 74 S.D. 387, 53 N.W.2d 539.

■ Counsel for defendants Lundeen and Sunshine contend that because at the time of the accident the trailer was empty this endorsement was not violated, and they cite in support thereof the case of Nichols v. Hawkeye Casualty Co., 233 Iowa 838, 10 N.W.2d 533, 534. There the permitted use or limit of coverage was " 'personal pleasure, family and occasional business use.' " The insured automobile had been engaged in a prohibited use, but had returned to its permitted use. The Court stated that the fact that the use shortly before the accident was a use not covered, or that movement at the time of the accident was with the intention of again engaging in an unauthorized use, did not prevent coverage. Another Iowa case to the same effect is United Fire & Casualty Co. v. Mras, 243 Iowa 1342, 55 N.W.2d 180. We are here confronted with a dissimilar policy provision and fact situation. The endorsement here involved does not constitute an agreement that the vehicles will not be used for hauling someone else's products, but an absolute agreement that they will be used exclusively for hauling the assured's own farm equipment and products. When Brockhouse permitted his trailer to engage in the operation of hauling Kooiman's hay, he departed from the use permitted by the endorsement, and until such time as the trailer was again returned to the use of hauling his own "farm equipment and products", such use was outside and beyond the coverage provided by the endorsement. In our view, the fact that at the time of the accident the trailer was actually empty makes no difference. It departed from its permitted use when it engaged in the business of hauling Kooiman's hay on October 11th, and it was still so engaged at the time of the accident and had never been returned to the permitted use of hauling the assured's own farm equipment and products. This endorsement limiting the use of these units to the hauling of assured's own equipment and products exclusively, is an absolute exclusion of other uses, and in the absence of any waiver on the part of Hartford, is controlling.

### (2)

■ Brockhouse claims that the agents of Hartford knew of his occasional hauling for hire, and that therefore the company has waived the exclusive use provision of the endorsement and is estopped from denying liability by reason thereof. The Hartford policy contains the following provision:

"Changes. Notice to any agent or knowledge possessed by any agent * * * shall not effect a waiver * * * or estop the Company from asserting any right, except by endorsement issued to form a part of this policy * * *."

There is no evidence to the effect that the agents of Hartford knew what equipment, which was covered by the policy, Brockhouse occasionally used to haul for hire. It should be noted that only the tractor and semi-trailer are included in the endorsement limiting their use to hauling the assured's own farm equipment and products. The policy also covered a Ford truck. Therefore, the policy provisions designating the "automobile" as "commercial" and the "occupation or business" of the assured as "livestock transit" still applied to the Ford truck. Thus we believe that considering all of the provisions of the policy together, the coverage provided was that coverage which the agents understood was desired by Brockhouse. We hold that there has been no waiver or estoppel by reason of any notice or knowledge of Hartford's

agent. See cases hereinbefore cited re State Auto.

### (3)

 Brockhouse further contends that there is such an ambiguity in the endorsement when compared with the other provisions of the policy as to require such ambiguity to be resolved in favor of the insured. On the face of the policy, the occupation or business of the insured is stated to be "livestock transit." And the purpose for which the "automobile" is to be used is designated as "commercial." Commercial is defined:

"(b) The term 'commercial' is defined as use principally in the business occupation or the Named Insured as stated in Item 1, including occasional use for personal, pleasure, family and other business purposes."

The typewritten endorsement heretofore quoted under Point (1), attached to and forming a part of the policy, states in plain and unequivocal language that as to the tractor and semi-trailer, "these units will be used exclusively for hauling the assured's own farm equipment and products." We think that an ordinary businessman could not fail to understand by a fair reading of these provisions that this endorsement limited the use of these two units to hauling the assured's own farm equipment and products. We find no ambiguity in these provisions of the policy, and this Court cannot strain to find an ambiguity which does not exist. In Gorman v. Fidelity & Casualty Co. of New York, 8 Cir., 55 F.2d 4, at page 6, the Court said:

"Courts should not be 'cunning and astute to evade, rather than quick to perceive and diligent to apply, the meaning of the words,' as manifestly intended by the parties."

In urging that the contract is ambiguous, counsel for Brockhouse rely upon the case of Birnbaum v. Jamestown Mutual Ins. Co., 298 N.Y. 305, 83 N.E.2d 128, 131. There the endorsement, couched in language much less explicit than ours, contained three separate provisions, and we are inclined to agree with the New York Court when it said in that case:

" 'Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company.' "

In our determination here, we hold that the endorsement, considered in the light of the other provisions of the policy above mentioned, is not so manifestly ambiguous that reasonable men would honestly differ as to its meaning. In a later case of Cooney v. Liberty Mutual Insurance Co., 284 App.Div. 328, 132 N.Y.S. 2d 382, 385, the Court said:

"We have given consideration to the rule that any exception to a general coverage in an insurance policy must be so stated as to be clear and unequivocal and written in such terms as to be intelligible to an ordinary businessman. [Cases cited.] We reach the conclusion, however, that as applied to the circumstances present here the exception containing the words 'abandoned or unused materials' are not ambiguous or likely to mislead the ordinary businessman."

### (4)

Defendant Brockhouse further contends that Hartford by its conduct after receiving notice of the accident has waived its right to deny liability herein. Specifically, he charges that he was deprived of his right to remove the state court actions to the United States District Court because Hartford did not notify him of its denial of liability within the time which would have permitted him to remove the cases to this Court.

On this point it is necessary to reconsider some of the facts. The accident occurred on October 13, 1954. Hartford was notified immediately thereafter and presumably made an investigation. On December 6, 1954, one of Hartford's claim representatives sent to the defendants Brockhouse and Koster a letter denying any liability under the policy because of: (1) the limitation of use endorsement, and (2) the exclusion deny-

ing any coverage because the trailer and tractor involved in the accident were not both insured with Hartford. On September 29, 1955, the two suits hereinbefore mentioned were instituted in state court, process being served on the defendants as provided by SDC 33.0809. On October 3, 1955, the defendant Brockhouse, with his attorney, came to the claim office of Hartford in Sioux Falls and talked to the Hartford claim representative, Mr. O. M. Langehough. Pursuant to the request of Langehough, the pleadings were forwarded to the defendant Hartford. Thereafter, neither the defendant Brockhouse nor his attorney heard anything further until October 27, 1955, on which date an attorney for Hartford requested Brockhouse and Koster to sign a non-waiver of rights agreement.

Considering the fact that Hartford had once denied liability under the policy, it would appear that as much of a duty rested with Brockhouse to inquire into Hartford's disposition of the cases during the 20 day period when application for removal could have been made, as there was a duty upon Hartford to notify Brockhouse within such 20 day period of its intentions regarding the defending of such actions. It must be conceded that an insurance company may in the first instance disclaim liability under such a policy of insurance as is here involved, and by subsequently taking complete charge of the defense of an action against its insured, waive its right to deny liability. Such a case is Consolidated Electric Co-op. v. Employers Mutual Liability Ins. Co., D.C., 106 F.Supp. 322. However, we have a different situation here. Hartford, by taking slightly over three weeks to reconsider the position which it would take after the institution of these state court actions, did not in any sense assume control of the defense and should not be estopped to renew its position of non-liability. See Security Ins. Co. v. Jay, D.C., 109 F.Supp. 87; Schmierer v. Mercer, 67 S.D. 639, 297 N.W. 682; Meyers v. Continental Casualty Co., 8 Cir., 12 F.2d 52.

It would appear that the conduct of Hartford was entirely reasonable and in accordance with ordinary business practices. Under the terms of the policy, it was the duty of Hartford to defend any suit brought against its insured if the basis of such suit was within the coverage provided by the terms of the policy, and presumably that was the reason why its claims representative requested that the company be furnished with copies of the suit papers served upon Brockhouse and Koster. During this interval of slightly more than three weeks, Hartford decided to defend the state court actions under a non-waiver of rights agreement, and under South Dakota law it had 30 days time within which to serve its pleadings on behalf of Brockhouse and Koster. While it seems to be the rule that there can be no enlargement of the 20 day period for a removal of a state court action to the United States District Court, it appears in this case that the defendant Brockhouse demonstrated no concern whatever regarding a removal of these suits to the United States District Court until after such 20 day period had expired. If during this 20 day period Brockhouse had desired the cases removed, he should have communicated such desire to Hartford. Furthermore, in order to have effected a removal of these state court actions to the United States District Court, the defendant Kooiman would have been required to join therein. 28 U.S.C.A. § 1441; Bailen v. Deitrick, 1 Cir., 84 F.2d 375; Barfield v. Southern Ry. Co., D.C., 47 F.Supp. 684.

In the case of Security Ins. Co. v. Jay, supra, the insurer took eleven months to investigate a case and also attempted a nuisance settlement. The Court said in that case that it was true that the plaintiff had taken an unseemly length of time to finish its investigation and reach a conclusion, but the delay did not cause any loss of evidence nor impede the defendant's preparation for trial. In the instant case the time element has not hindered the defendant Brockhouse's preparation for trial, and he has suffered no prejudice of any substantial

right by reason of the acts and conduct of Hartford.

 There has been some contention made in this case that liability should be imposed upon Hartford by reason of the Minnesota Warehouse Endorsement Act. The endorsement for Minnesota Motor Carrier Policies, forming a part of the Hartford policy, contains the following provision:

"* * * The liability of the company extends to such losses, damages, injuries, or deaths occurring within the state of Minnesota."

The accident involved herein occurred in South Dakota. Therefore, the endorsement does not apply.

 There has been some contention that the existing statutes in regard to financial responsibility laws of South Dakota and Minnesota extend the coverage of the policies. Each policy contains the following similar provision:

"Financial Responsibility Laws: Coverages A and B: Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Association for any payment made by the Association which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

Both the Minnesota Financial Responsibility Act, M.S.A. § 170.21 et seq. and the South Dakota Act, SDC 44.0504, may be termed "second bite" laws. A motorist is not required to carry liability insurance as a prerequisite to driving in Minnesota until he has had his first accident, nor in South Dakota until final judgment has been obtained against him. Nothing appears in the record that either condition existed in this case. Nor does the Minnesota law have extraterritorial effect, and as this accident occurred in South Dakota, it cannot apply.

 It has also been contended in this case that the Hartford policy provided coverage for the Kooiman tractor as a temporary substitute automobile. The policy provision reads as follows:

"Temporary Substitute Automobile—an automobile not owned by the Named Insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The rule applicable to this situation is stated in the Annotation 34 A.L.R.2d 936:

"One of the basic elements of a 'substitution' provision is that the automobile claimed to be covered be actually used as a 'substitute' for the described automobile.

"Thus, for example, it must be shown that, absent one of the specified circumstances, the described vehicle would have been used for the trip on which the accident occurred."

In this case not only is evidence entirely lacking that the Brockhouse tractor would have been used for hauling this hay for Kooiman, but the evidence is affirmatively to the contrary. The only Brockhouse equipment that Kooiman needed for the hauling of this hay was the Brockhouse semi-trailer. The Brockhouse tractor did not require any substitute when the trailer was obtained for use with the Kooiman tractor for the hauling of this hay.

 The insurance policies of both Hartford and State Auto contain the following exclusion:

"This policy does not apply:
(c) under coverages A and B, while the automobile is used for the tow-

ing of any trailer owned or hired by the Insured and not covered by like insurance in the Company; (association) or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the Company; (association)."

It is undisputed that neither Kooiman nor Brockhouse owned both the trailer and the tractor involved in this action. One was owned by each. But the question does arise, "Was there a hiring of the tractor by Brockhouse?" or "Was there a hiring of the trailer by Kooiman?". Counsel for Kooiman contends that Brockhouse was an independent contractor in the hauling of this hay, and counsel for Brockhouse contends that Koster was a loaned servant at the time of the accident when he was driving the Kooiman tractor towing the Brockhouse trailer. There is considerable dispute in the testimony as to the exact arrangements between Kooiman and Brockhouse. This Court in its discretion elects not to decide the relationship existing between Kooiman, Brockhouse and Koster at the time of the accident. Washington-Detroit Theatre Co. v. Moore, 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105. This disputed question of fact will be the subject of judicial determination in the pending state court actions. The existence of another adequate remedy is sufficient to justify such a refusal made in the exercise of discretion. Also, it has been declared to be an abuse of discretion to entertain a suit for a declaratory judgment when another action between the same parties in which all issues may be determined is pending at the time of the commencement of the declaratory judgment suit. 16 Am.Jur. 289; Woollard v. Schaffer Stores Co., 272 N.Y. 304, 5 N.E.2d 829, Id., 273 N.Y. 527, 7 N.E.2d 676, 109 A.L.R. 1262. Thus this Court in its discretion chooses to determine only the questions of the legal relationships existing between State Auto and Hartford and their respective insureds at the time of the accident. For

all of the reasons hereinbefore stated, the Court decides that there is no liability on the part of either State Auto or Hartford under the policies of insurance issued by them in this case.

Counsel for State Auto and Hartford may jointly prepare and submit to the Court proposed Findings of Fact, Conclusions of Law and Judgment in accordance with this opinion, upon five days notice to counsel for the other parties.