FIRST NATIONAL BANK vs. AMERICAN CENTRAL INSURANCE CO.

Argued May 11, 1894. Reversed Oct. 16, 1894.

No. 8800.

**Fire insurance.**

In an action brought against an insurance company on a policy of insurance to recover a loss:

**Waiver of defects in proof of loss.**

*Held*, that it appears by the answer that proof of loss was served on the insurer, and, if such proof was defective, that the defect was waived by its retaining such proof.

**Other insurance known to the insurer.**

Where the policy provided that it should be void if the insured procured other insurance on the property, but it was orally agreed between the insurer and the insured that permission should be given the insured to procure $11,000 other concurrent insurance, and that this permission should be inserted in the policy, but by clerical mistake permission was so inserted for only $3,000 other insurance, and there was on the property, at the time this policy was delivered, $11,000 other insurance, which the agent of the insurer then knew, *held* (following *Brandup* v. *St. Paul F. & M. Ins. Co.*, 27 Minn. 393), by delivering the policy, knowing the existence of such other insurance, the insurer waived this condition.

**Condition against incumbrance not waived.**

The policy contained a printed condition avoiding it if the subject of the insurance is personal property, and be or become incumbered with a chattel mortgage. *Held*, the subsequent written portion of the policy,

insuring the property of the insured, "its own, or held by it in trust or on commission, or sold but not delivered," did not annul or supersede the condition against such chattel mortgage incumbrance, and the placing of such an incumbrance on the property after the making of the policy, and before the loss, avoided the policy.

Appeal by defendant, the American Central Insurance Company of St. Louis, Mo., from an order of the District Court of Ramsey County, *J. J. Egan*, J., made March 6, 1894, denying its motion for a new trial.

The Devil's Lake Mill Company of North Dakota was insured by defendant December 12, 1892, against fire to the amount of $500, on its grain, seeds, flour, feed, bran, shorts and grain bags, its own or held by it in trust or on commission or sold but not delivered, while contained in the frame shingle roof elevator and warehouse at Devil's Lake. In the printed portion of the policy was a provision that it should be void if the property insured be or become incumbered by a chattel mortgage. There was then on this and other property a mortgage to the plaintiff, the First National Bank of Devil's Lake, N. Dak. made October 12, 1892, to secure the payment of $5,000. Another chattel mortgage was made on this property December 28, 1892, to R. F. Fulton to secure payment to him of $5,000. The property was totally destroyed by fire January 12, 1893. The total loss on flour was $7,173 and on wheat $5,200. The total insurance was $11,500. After the fire the Mill Company assigned to the bank all its claim under the policy against defendant. The bank brought this action, a jury was waived, the court made findings and ordered judgment for plaintiff for the $500 and interest. Defendant moved for a new trial. Being denied it appeals.

*S. E. Hall* and *Kueffner, Fauntleroy & Searle*, for appellant.

The plaintiff is not entitled to recover in this action because the insured property was encumbered by chattel mortgages against the express condition of the policy. This was a legal and valid condition. *Plath* v. *Minnesota F. M. Fire Ins. Co.*, 23 Minn. 479; *Schumitsch* v. *American Ins. Co.*, 48 Wis. 26; *Bosworth* v. *Merchants' F. Ins. Co.*, 80 Wis. 393; *Lee* v. *Agricultural Ins. Co.*, 79 Ia. 379.

That portion of the policy which describes the property insured

as that which belongs to the assured or is held by him "in trust or on commission or sold but not delivered," does not nullify the condition against incumbering by chattel mortgage. There is no inconsistency between these two clauses of the policy. *Equitable Life Assur. Soc.* v. *Clements,* 140 U. S. 226.

The policy permitted but $3,000 concurrent insurance. There was in fact $11,000. Parol evidence was received over defendant's objection to vary this restriction and validate the policy. This was error. *Bourgeois* v. *Mutual Fire Ins. Co.,* 86 Wis. 402; *Schomer* v. *Hekla Fire Ins. Co.,* 50 Wis. 575; *Goldin* v. *Northern Assur. Co.,* 46 Minn. 471; *Bennett* v. *St. Paul F. & M. Ins. Co.,* 55 N. J. Law 377; *Funke* v. *Minnesota F. M. F. Ins. Ass'n.,* 29 Minn. 347; *Hollis* v. *State Ins. Co.,* 65 Ia. 454; *Putnam Tool Co.* v. *Fitchburg Mut. Fire Ins. Co.,* 145 Mass. 265.

The fact that the assured failed to read the policy until after the fire will not help the plaintiff out. *Adams* v. *Eidam,* 42 Minn. 53; *Wilkins* v. *State Ins. Co.,* 43 Minn. 177; *McFarland* v. *St. Paul F. & M. Ins. Co.,* 46 Minn. 519; *American Ins. Co.* v. *Neiberger,* 74 Mo. 167; *Fuller* v. *Madison Mut. Ins. Co.,* 36 Wis. 599; *Stevens* v. *Queen Ins. Co.,* 81 Wis. 335.

The failure on the part of the plaintiff to prove the execution and delivery of proofs of loss according to the conditions of the policy is fatal to a recovery. *Bowlin* v. *Hekla Fire Ins. Co.,* 36 Minn. 433; *Shapiro* v. *Western Home Ins. Co.,* 51 Minn. 239; *Lane* v. *St. Paul F. & M. Ins. Co.,* 50 Minn. 227; *Elsman* v. *Insurance Co.,* 17 Ins. L. J. 340; *Boon* v. *State Ins. Co.,* 37 Minn. 426.

*Bunn & Hadley,* for respondent.

We submit that the chattel mortgages did not avoid the policy. The written language insures not only goods belonging to the Devil's Lake Mill Company but goods held in trust by it, or on commission, or sold but not delivered. This is an old form policy. The words "held in trust" have had a settled meaning in insurance law for many years. The words do not signify a technical trust in the sense of the law, such a trust for example as is said to be cognizable in chancery. The phrase has a loose and mercantile meaning; it signifies goods which the insured is entrusted with; which he

has in store; which he has in his possession or custody; which he holds as trustee, bailee, agent, &c. *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527; *Hough* v. *People's Ins. Co.*, 36 Md. 398; *Phoenix Ins. Co.* v. *Favorite*, 49 Ill. 259.

If the goods were entrusted to the insured for keeping and were in the elevator building when burned they were covered. These words mean that the assured need have no personal interest in the goods whatever. He need have no pecuniary investment in them. It is only necessary that he should be the bare custodian of them. His being custodian and under the obligation to exercise ordinary care gives him an insurable interest. In other words the company has stipulated that those provisions contained in the ordinary printed policy which compel the assured to be the owner, to have the title, or to have a legal interest, are utterly immaterial to the company in this particular risk. The company says by these words that it is satisfied to insure the goods for whoever it may concern, so long only as they are in the custody and control of the assured, and so covered by the written words of the policy, although the printed condition is plain that the policy would not cover it. It is therefore obvious that the particular printed clause requiring the insured to be' sole and absolute owner is abrogated by the written words, and cannot apply to this risk.

Now, as to the stored wheat, it is also immaterial how, or how often, the ownership or interest may change, so long as it remains stored in the elevator. Warehouse receipts may be issued for it and these may pass from hand to hand and the title to the wheat may change daily. And yet it is always covered, notwithstanding the changes of title because it is held in trust by the assured. It therefore cannot be disputed, that these written words overrule that printed clause which covenants against any change of title or interest.

Again, as to wheat or flour which belonged to the Devil's Lake Mill Company, when the policy was issued, it might afterwards issue warehouse receipts and pass the title to third persons. Still the property would be insured because it would come within the description of the written part of the policy "goods held in trust," or "sold but not delivered."

And if the Mill Company could make an absolute sale by delivery of a warehouse receipt it could pledge that receipt for advances. This would give the pledgee under well known decisions of this court a good lien on the wheat. And yet it would be insured, because it would be held in trust by the warehouseman exactly as in the case where he sells absolutely a warehouse receipt. And yet pledging a warehouse receipt has identically the same effect as putting a chattel mortgage on the wheat. If this policy permits an ordinary and actual sale without delivery, if it permits an absolute sale by delivery of a warehouse receipt, if it permits a pledge of a warehouse receipt to secure a loan, there is no sense in saying that it forbids the same thing in another form, to-wit, the delivery of a chattel mortgage.

Defendant's position is, that if the warehouseman makes an absolute sale without delivery he is insured, but if he makes a sale without delivery retaining a right to redeem he is not insured.

It must be conceded that if the whole title is sold, the wheat remaining in the warehouse, it is insured. There is no resisting the logical conclusion that if a less interest than the full title is sold, the wheat still remaining in the warehouse, it is also insured. The defense comes down on this point to the purest technicality. Counsel insist upon sole regard being had for the mere form of words, and upon the court utterly disregarding the substance, reason and true meaning of the language. We insist, that the written part of the policy makes the printed clause against chattel mortgages just as inapplicable to this case as the other printed clauses requiring the assured to be the sole owner and forbidding any change in interest or title. The point comes down to this: Chattel mortgaged wheat left by the mortgagee in the possession and control of the assured would be wheat held by it "in trust." It therefore comes within the written description of the policy and is covered. Our conclusions are very well supported by the cases of *Grandin* v. *Rochester German Ins. Co.*, 107 Pa. St. 26, and *Broadwater* v. *Lion Fire Ins. Co.*, 34 Minn. 465.

And the principle also applies, that if the court is fairly doubtful on reading the whole contract as to what was intended, that doubt should be resolved in favor of indemnity and against a forfeiture.

*Chandler* v. *St. Paul F. & M. Ins. Co.,* 21 Minn. 85; *Reed* v. *Washington F. & M. Ins. Co.,* 138 Mass. 572.

CANTY, J. The defendant issued a policy of fire insurance to the Devil's Lake Mill Company, insuring the property hereinafter mentioned against fire. During the life of the policy the property insured was burned. The sum due under the policy was assigned to plaintiff, who brings this suit to recover for the loss. On a trial before the court without a jury, judgment was ordered for plaintiff, and, from an order denying a new trial, defendant appeals.

1. It is claimed by appellant that it was not proved on the trial that any proof of loss was ever served on it as required by the policy. The complaint alleges that such proof of loss was served. The answer denies this by a general denial, but alleges that on the same day "a sworn statement in regard to said fire, and the property covered thereby, and the incumbrances thereon," was made, and sent to it by mail by the mill company, which it alleges was fraudulent. While the answer does not state that this sworn statement contained all the data required to be given in the proof of loss, it at least admits that sufficient was stated to make a defective proof of loss, and the defendant, by retaining it, has waived the right to avoid the policy for want of a sufficient proof of loss.

2. The policy provided that it should be void if the insured has, or shall hereafter procure, other insurance on the property. Permission was given by the written words of the policy for other concurrent insurance to the amount of $3,000. It is admitted, and found by the court, that there was, at the time said policy was made, other concurrent insurance on said property to the amount of $11,000.

It is claimed by appellant that this avoided the policy. In answer to this it is alleged by the plaintiff, and found by the court, that, at the time the policy was made, appellant's agent knew of this other insurance, and consented thereto; that he intended to consent thereto in the terms of the policy, and promised the mill company so to write said policy, but by clerical mistake the policy was so written as to limit the concurrent insurance to $3,000; and that the mill company did not examine the policy, or know of the mistake, until after the fire.

The appellant, by delivering the policy knowing of the existence of this $11,000 concurrent insurance, waived the condition. *Brandup* v. *St. Paul F. & M. Ins. Co.*, 27 Minn. 393, (7 N. W. 735.)

3. The policy provides that "this entire policy, unless otherwise provided by agreement hereto added, shall be void * * * if the interest of the insured be other than the unconditional and sole ownership, * * * or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage, * * * or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance."

Prior to the fire the mill company placed two chattel mortgages on the property insured, and the appellant contends that this avoided the policy.

In answer to this the plaintiff contends that the foregoing provisions, being in the printed portion of the policy, are superseded by the written part of the policy, which part is as follows:

"$500. on its grains and seeds of all kinds, also flour, feed, bran, shorts, and grain bags, its own, or held by it in trust or on commission, or sold but not delivered, while contained in the frame, shingle-roof elevator and warehouse building situate," etc.; that this written part of the policy permits conditions to exist which cover all the conditions which did exist after the chattel mortgages were placed upon the property, and completely unseats and annuls the provision against placing chattel mortgages on the property.

The question, to us, has been a difficult one, but after much consideration we are unable to agree with counsel, but have come to the conclusion that this written clause does not unseat or annul the provision against mortgaging the property. It certainly unseats the printed condition against selling the property. But can we hold that, in such a case as this, permission to sell property absolutely, includes permission to mortgage it? Is it a case of the greater including the less? We think not. There may be, and often is, a moral hazard in carrying an insurance risk on property covered by a chattel mortgage which would not exist as to property sold absolutely, but left in the vendor's possession. We are not unmindful that "held in trust," when used in an insurance policy in this manner, does not signify a technical trust, but has a broad meaning, and will

include property in the custody of a bailee or mere agent. Neither are we unmindful of the rule that a condition of this character, working a forfeiture, should be strictly construed. We are still forced to the conclusion that the difference between a chattel mortgage and an absolute sale, as affecting an insurance risk, is too substantial for us to hold that, where both are prohibited in the printed part of the policy, permission in the written part of the policy to make the latter includes permission to make the former.

By reason of placing the two chattel mortgages on the insured property, the policy became void, and plaintiff cannot recover.

The order appealed from should be reversed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 60 N. W. 345.)