**RITEWAY CARRIERS, Inc.**

v.

**STUYVESANT INS. CO.**

No. 14945.

United States Court of Appeals, Eighth Circuit.

June 25, 1954.

Rehearing Denied Aug. 9, 1954.

Harding A. Orren, Minneapolis, Minn.
(Robins, Davis & Lyons, Minneapolis,
Minn., on the brief), for appellant.

Irvin E. Schermer, Minneapolis, Minn.
(Schermer & Gensler, Minneapolis,
Minn., on the brief), for appellee.

Before SANBORN, THOMAS and
JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The Stuyvesant Insurance Company
on February 20, 1952, issued a policy, in
which Dorothy Dugas and Dorothy D.
Oskey were named as assureds, covering
nine Fruehauf trailers against loss or
damage from fire, theft, or collision.
One of these trailers, bearing serial number F. W. 54304, was damaged to the extent of at least $7,000 by accidental collision on July 1, 1952, while the policy
was in effect.  At the time of the collision, Riteway Carriers, Inc., was the assured named in the policy and the owner
of the insured trailers.  It is conceded
that unless coverage under the policy
was suspended, the Insurance Company
owes its assured $6,500 ($7,000 less the
$500 deduction provided for by the policy in case of collision).

The policy contained the following exclusion clause:

"This policy does not apply:

"b. Under any of the coverages
while the automobile is subject to
any bailment lease, conditional sale,
mortgage or other incumbrance not
specifically declared and described
in this policy."

There was an endorsement on the policy making loss, if any, payable to the
assured and Fruehauf Trailer Company
(which had a mortgage on the nine trailers) as their interests may appear.
There were no other loss payable clauses

endorsed on the policy and no declaration or description of any other encumbrances.

The Insurance Company disclaimed liability for loss on the damaged trailer upon the ground, among others, that three chattel mortgages, given by the assured to the National Finance Company subsequent to the issuance of the policy, which mortgages included the nine Fruehauf trailers, were not specifically declared or described in the policy.

The assured brought this action on the policy. Jurisdiction was based upon diversity of citizenship and amount in controversy. The Insurance Company denied liability. The case was tried to a jury.[1] The District Court denied a motion of the Insurance Company made at the close of the evidence for a directed verdict. The jury returned a verdict for the assured. The Insurance Company moved the court for judgment notwithstanding the verdict of the jury. The motion was granted, and from the ensuing judgment for the Insurance Company the assured has appealed. The opinion of the District Court is reported in 114 F.Supp. 507.

The policy in suit was a Minnesota contract and the applicable substantive law is that of Minnesota. The District Court, in entering judgment for the Insurance Company, ruled that the existence, at the time of loss, of chattel mortgages, of which neither the Company nor its agent had actual or constructive knowledge and which were not specifically declared or described in the policy, suspended coverage by virtue of the exclusion clause.

■ The assured at the trial did not contend and does not now seriously contend that the policy clause in question was invalid. The assured in its brief says: "While the existence of the clause

in question in the policy may be valid, we feel that its application should be strictly circumscribed, particularly in view of current financial practices with respect to the financing of automobiles," and that considerations of public policy should result in a reversal of the judgment appealed from. This Court, however, establishes no rules of law or of public policy for the State of Minnesota. We have repeatedly said that all that reasonably can be expected of us, in reviewing cases governed by local law, is to see that the determination of the trial court is not induced by a clear misconception or misapplication of such law. Buder v. Becker, 8 Cir., 185 F.2d 311, 315; National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243.

Exclusion clauses the same or similar to that in suit have been held to be valid and effective by the Supreme Court of Wisconsin. Moe v. Allemannia Fire Ins. Co. of Pittsburgh, 209 Wis 526, 244 N. W. 593; Fountain v. Importers' & Exporters' Ins. Co. of New York, 214 Wis. 556, 252 N.W. 569; Estreen v. Fire Association of Philadelphia, 229 Wis. 494, 282 N.W. 573; Straw v. Integrity Mutual Ins. Co., 248 Wis. 96, 20 N.W.2d 707, 163 A.L.R. 1396.

■■ In the State of Minnesota the rule of liberal interpretation of an insurance policy does not permit a court to make a new contract for the parties by arriving at an interpretation in conflict with the clear meaning of the language of the policy. Mady v. Switchmen's Union of North America, 116 Minn. 147, 149, 133 N.W. 472; Koeberl v. Equitable Life Assurance Society, 190 Minn. 477, 479, 252 N.W. 419; Tomlyanovich v. Tomlyanovich, Minn., 58 N.W.2d 855, 857. Cf. Matusek Academy of Music, Inc. v. National Surety Corp., 7 Cir., 210 F.2d 333, 336–337; Bergholm v. Pe-

---

1. The original record on appeal, to which we have had recourse, shows that at the trial the defenses asserted by the Insurance Company were: (1) false representations by the original assureds as to sole ownership of the trailers and as to the date when they were purchased new; (2) lack of an insurable interest in the assureds; and (3) exclusion of coverage because of the existence of chattel mortgages not specifically declared and described in the policy.

oria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416. There is no ambiguity in the language of the clause in suit, hence no room for construction.

The policy was issued at the request of Kenneth D. Oskey, President of the assured, by an agent of the Insurance Company, namely A. R. Krawetz doing business as Insurance Service Company in St. Paul, Minnesota. Premium payments were made to Krawetz as follows: $200 by a check of Oskey, payable to "Ins. Service", dated May 9, 1952; $200 by check of "Riteway Carriers, Inc.", payable to "Insurance Service", dated May 16, 1952; and $200 by check of "Riteway Carriers, Inc.", payable to "Insurance Service", dated May 27, 1952. The three chattel mortgages made by the assured to the National Finance Company were dated May 6, 1952, May 12, 1952, and June 10, 1952, as security for loans of $25,000, $4,375 and $8,000 respectively.

The National Finance Company on May 19, 1952, wrote Krawetz stating that it held a $25,000 chattel mortgage on the goods, chattels and vehicles of Riteway Carriers, Inc., and asking that a loss payable clause in favor of the Finance Company be attached to the policy in suit. Prompt attention to the matter was requested. The letter was received by Krawetz on May 20 or 21, 1952. At that time the assureds named in the policy were Dorothy Dugas and Dorothy D. Oskey, who held title to the trailers as a matter of convenience. Riteway Carriers, Inc. had been incorporated in April 1952. Title to the Fruehauf trailers had been transferred to it on May 4, 1952, and it was not until May 27, 1952, that the policy was changed to designate Riteway Carriers, Inc. as the assured.

Krawetz testified that when he received the letter from the National Finance Company on May 20 or 21, 1952, he knew nothing about Riteway Carriers, Inc. However, on May 20, 1952, the premium check of May 16, 1952, for $200 from "Riteway Carries, Inc." bore the endorsement, "Insurance Service Co., A.

R. Krawetz," and on June 3, 1952, the May 27, 1952, check of "Riteway Carriers, Inc." was similarly endorsed.

Krawetz testified that the only reason that he did not comply with the request of National Finance Company for a loss payable clause in the policy was either that he could not contact Oskey for instructions or that he did not realize that the letter of May 19, 1952, related to the policy in suit. Krawetz stated that he had authority from the Insurance Company to make loss payable endorsements on policies without requiring additional premium, and that it was customary when a letter such as that from National Finance Company was received to call on the assured for instructions relative to the requested endorsement. Krawetz conceded that if he in May, 1952, personally received the premium checks from the assured, he "would know that Riteway Carriers existed, but I cannot draw that far back on my memory."

On August 12, 1952, Krawetz wrote the National Finance Company that "we are not at the present time insuring any property of any kind for the Riteway Carriers, Inc., Mr. Kenneth Oskey or anyone connected with his organization."

Oskey testified that he saw the letter of the National Finance Company to Krawetz dated May 19, 1952, about the time it was received, that Krawetz asked him what to do about the letter, and "I told him that Fruehauf Trailer naturally has the first mortgage and if they [National Finance Company] wish a payable clause sent to them I supposed it would be the right thing to do to send them one." Oskey also testified that he had delivered the premium checks of May 16 and May 27, 1952, to Krawetz personally.

■ Viewing the evidence in the light most favorable to the assured, it appears that the assured was entitled to have the loss payable clause requested by the National Finance Company endorsed on the policy, and that Krawetz, with notice of the existence of the $25,-

000 chattel mortgage of May 6, 1952, accepted the assured's premium check of May 27, 1952, knowing, of course, that the assured was not intending to pay for suspended insurance, which was equivalent to no insurance at all. The evidence would have sustained a finding that the Insurance Company, with knowledge of the $25,000 chattel mortgage, had, by accepting the assured's check for premium, estopped itself from denying liability on the ground that that mortgage was undeclared and undescribed in the policy. Cf. Emmco Ins. Co. v. Palatine Ins. Co., Ltd., 263 Wis. 558, 58 N.W.2d 525.

We agree with the District Court that there was no competent or substantial evidence that either Krawetz or the Insurance Company had actual or constructive knowledge of the second chattel mortgage or the third chattel mortgage given by the assured to National Finance Company covering, among other equipment, the nine Fruehauf trailers. Oskey testified:

> "The first mortgage to the National Finance Company was in the sum of $25,000.00. The second mortgage is for $4,000.00 and the third one is for $8,000.00. The second and third mortgages were actually not on the Fruehauf Trailers, so there was actually no reason to discuss the second and third mortgages with Mr. Krawetz, because his insurance had nothing to do with them. I don't know if I actually did or did not discuss the second and third mortgages specifically with Mr. Krawetz."

What Oskey meant was that the second and third mortgages were given to finance the purchase of additional equipment and that the insured trailers were included in the mortgages as additional security.

■ There was evidence from which it might be inferred that the assured's failure to notify Krawetz of the second and third chattel mortgages was due to Oskey's belief that National Finance Company would request that loss payable clauses be endorsed on the policy to cover those mortgages and that Krawetz would comply with the request.

Since a waiver is the voluntary and intentional relinquishment of a known right, and since the Insurance Company had no knowledge, actual or constructive, of the second and third chattel mortgages, it could not be held to have waived the clause of its policy suspending coverage while the insured property was subject to undeclared and undescribed chattel mortgages. There was no evidence to justify a finding that the Insurance Company or Krawetz misled the assured into believing that the placing of undisclosed chattel mortgages upon the insured trailers would not suspend coverage.

■ The assured is of the opinion that, under Minnesota law, a loss payable clause respecting one mortgage will apply to subsequent mortgages if made to the same mortgagee and that the policy in suit should be regarded as containing a loss payable clause in favor of the National Finance Company with respect to the $25,000 chattel mortgage of May 6, 1952.

At the trial the assured requested and the court gave the following instruction:

> "It is the law that a loss payable clause for the benefit of one holding an encumbrance on the insured property is sufficient to include subsequent encumbrances to the same mortgagee. Therefore, if Mr. Krawetz had placed a loss payable clause on the policy for the benefit of the National Finance Company at the time the same was requested by the National Finance Company or at any time thereafter, all subsequent mortgages to the National Finance Company would have been covered by and included in the loss payable clause and would not constitute a policy defense."

The Insurance Company, in moving for judgment notwithstanding the verdict or, in the alternative, for a new

trial, asserted that the court was in error in giving that instruction.

The District Court, in ruling on the Insurance Company's motion, reached the conclusion that if a loss payable clause had been endorsed by Krawetz on the policy in response to the National Finance Company's letter of May 19, 1952, the clause would have related only to the chattel mortgage referred to in the letter and that the endorsement could not have prevented a suspension of coverage resulting from placing subsequent additional chattel mortgages upon the insured trailers.

In the absence of any Minnesota authority to the contrary, the District Court's conclusion was a permissible one. In Westchester Fire Ins. Co. of New York v. Norfolk Building & Loan Ass'n, 8 Cir., 14 F.2d 524, 525–526, we said: "It is well settled that a mortgage clause in an insurance policy only refers to a mortgage then in existence and does not cover any subsequent mortgage interest (Attleborough Savings Bank v. Security Insurance Co., 168 Mass. 147, 46 N.E. 390, 60 Am.St.Rep. 373); * * *." The Attleborough Savings Bank case unquestionably sustains this statement of the law. See, also, 29 Am.Jur., Insurance, § 1197. The Supreme Court of Minnesota may, of course, adopt a different rule, but, so far as we are advised, has not as yet done so.

■ Moreover, the general rule appears to be that an increase in the principal amount of mortgage indebtedness on insured property by the giving of a subsequent mortgage, without the knowledge or consent of an insurer, is a violation of a clause against encumbrances. Straw v. Integrity Mutual Insurance Co., 248 Wis. 96, 20 N.W.2d 707, 163 A.L.R. 1396, and cases cited in note on pages 1410–1412 of 163 A.L.R. Cf. Plath v. Minnesota Farmers' Mutual Fire Ins. Ass'n, 23 Minn. 479, 482; First National Bank v. American Central Insurance Co., 58 Minn. 492, 498, 60 N.W. 345.

■ The burden of demonstrating that the judgment appealed from resulted from a clear misconception or misapplication of Minnesota law is upon the assured. Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43; National Bellas Hess, Inc. v. Kalis, supra, page 741 of 191 F.2d; Kimble v. Willey, supra, page 243 of 204 F.2d. See also Firemen's Fund Ins. Co. v. Vermes Credit Jewelry, Inc., 8 Cir., 185 F.2d 142, 145–146.

While we think that the Insurance Company, in order to escape liability for a loss which as a matter of good conscience and fair dealing it should have paid, is taking advantage of an inadvertent, nonprejudicial and unsubstantial omission of its assured to have declared and described in the policy the second and third mortgages given to the National Finance Company, which mortgages, as the evidence shows, did not in fact increase the risk of collision or require an additional premium, we are unable to point to any error in the District Court's conclusion that, under the evidence and the applicable local law, the insurance was suspended by the plain terms of the exclusion clause of the policy at the time the loss occurred.

The judgment appealed from is affirmed.