**FRUEHAUF TRAILER COMPANY,**
a corporation, Plaintiff,

v.

**The STUYVESANT INSURANCE COM-PANY, a corporation, Defendant and Third-Party Plaintiff (RITEWAY CAR-RIERS, Inc., Third-Party Defendant).**

**Civ. No. 4550.**

United States District Court
D. Minnesota, Fourth Division.
Jan. 30, 1956.

Charles S. Kidder (of Orr, Stark & Kidder), St. Paul, Minn., for plaintiff.

Irvin E. Schermer (of Schermer & Gensler), Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

This proceeding was instituted by plaintiff under an automobile policy including collision insurance issued by defendant and covering plaintiff's interest as loss payee in nine Fruehauf trailers, one of which is the trailer involved herein. Thereafter, defendant filed a third-party complaint against defendant Riteway and one D. A. Gaumnitz seeking recovery from the third parties of all or part of any recovery which plaintiff might obtain from the defendant. Later, the third-party action against Gaumnitz was dismissed. The Riteway Carriers interposed an answer to the third-party complaint, but made no appearance at the trial.

The relevant facts may be stated as follows: On November 28, 1949, plaintiff sold to the Kenal Trucking Company a new Fruehauf van trailer, serial number FW 54304, under a conditional sales contract between the parties. Eight other similar trailers had been sold to Kenal under separate conditional sales contracts containing provisions identical to the contract under which FW 54304 was sold. On November 28, 1951, plaintiff entered into a "Modification of Schedule of Payments Conditional Sales Contract." This modified the schedule of payments of the unpaid balance under each of the nine conditional sales contracts aforementioned so that the monthly payments under all nine contracts were to be made in one lump sum. The modification provided, however, that, except as modified, all the terms, covenants and conditions of the conditional sales contracts should remain in full force and effect. On May 31, 1952, by a written contract between Kenal Trucking Company and Riteway Carriers, Inc., Kenal sold and transferred to Riteway all of its rights and equity as buyer under the aforementioned conditional sales con-

tracts, specifically setting forth each one. Under this contract, Riteway assumed all of the obligations of the buyer under the conditional sales contracts. Also, on May 31, 1952, plaintiff and Riteway entered into a second "Modification of Schedule of Payments Conditional Sale Contract", which was identical with the first modification except for a remodification of the monthly lump sum to be paid on the nine outstanding contracts. No payments were received on these contracts and their modification after November, 1952. The insurance policy of the defendant company involved herein was issued on February 20, 1952.

It appears that the trailer here involved, to wit, FW 54304, was damaged on July 1, 1952, in a collision in the State of Utah. Thereafter, and on the 23rd day of September, 1952, Riteway tendered to defendant a proof of loss, claiming that under the policy the damage sustained to the trailer totaled $8,200, and after deducting $500 thereof as provided in the policy, the amount claimed totaled $7,700. In the proof of loss, the interest of the Fruehauf Trailer Company was noted therein.

Subsequently, and on November 6, 1952, Riteway commenced an action against the defendant insurance company seeking recovery under said policy for the physical damage to the trailer. The insurance company interposed the defense that no liability existed on the policy because of the exclusion provisions thereof, which contained the following "Non-application of Insurance" clause:

"This policy does not apply:

"(b) under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy; * * *."

In regard to this exclusion clause, the insurance company pleaded that on July 1, 1952, the date of the loss, the trailer was subject to three chattel mortgages not specifically declared and described in the policy, the dates of said chattel mortgages and the principal sums due thereunder being as follows: May 6, 1952, $25,000; May 12, 1952, $4,375; June 10, 1952, $8,025. The action by Riteway against the defendant insurance company was tried in this Court with a jury and judgment was entered on the jury's verdict in favor of Riteway in the sum of $6,500. Thereafter, the trial court granted judgment in favor of Stuyvesant Insurance Company notwithstanding the verdict. Riteway Carriers v. Stuyvesant Ins. Co., D.C., 114 F.Supp. 507, and this judgment was affirmed by the Court of Appeals, 8 Cir., 213 F.2d 576, the court holding that the increase in the amount of the mortgage indebtedness on the insured property after the issuance of the insurance, without the knowledge or consent of the insurer, constituted a violation of the clause against encumbrances.

On May 6, 1953, Fruehauf brought this action against the defendant insurance company asserting that on July 1, 1952, the date of the accident, it was the owner and seller of this trailer in and pursuant to a contract of conditional sale under which Riteway had become obligated as buyer, and therefore it was entitled to recover under the policy and the loss payable clause endorsement.

The defendant insurance company asserts that no recovery can be had because (1) the exclusion clause in the policy was an insuring agreement governing coverage as to both the insured and the plaintiff as loss payee; (2) that plaintiff repossessed the trailer after the collision in full satisfaction of its conditional sales contract and hence the debt under the contract is satisfied; (3) that plaintiff has failed to prove the amount of the debt, if any, due on the conditional sales contract with reference to trailer FW 54304; and (4) in any event, if recovery is to be had, the trailer was not damaged in a sum greater than $2,131.40. These defenses will be considered in the order indicated.

## I.

It is admitted that, after the issuance of the policy in question, Riteway, on May 6, 1952, gave a chattel mortgage

covering the nine trailers and certain other equipment to the National Finance Company to secure the payment of $25,000. Thereafter, Riteway acquired a diesel tractor, and as part of that financing arrangement, gave a second mortgage on May 12, 1952, on the nine trailers previously mortgaged. On June 10, 1952, another mortgage was executed by Riteway on the nine trailers, together with other equipment. It does not appear that plaintiff had any knowledge or notice of the execution of such mortgage liens. And in view of the decision of the Court of Appeals, 213 F.2d 576, 577, it must be recognized that these mortgage liens were never " 'declared and described in the policy.' " In this proceeding, the insurance company asserts the same defense under the exclusion clause as was asserted against the claim of Riteway on the policy. However, the loss payable clause reads:

"Loss or damage, if any, under this policy shall be payable to the assured and Fruehauf Trailer Company as their interests may appear, and this insurance as to the interest of the Fruehauf Trailer Company shall not be invalidated by any change in the title or ownership of the property, nor by any notice of sale or other proceedings relating thereto, nor by the use of the property for purposes more hazardous than are permitted by this policy, nor by any action or neglect of the assured, excepting embezzlement, theft, robbery or pilferage by any person or persons in the insured's household or in the insured's service or employment, and excepting also the wrongful conversion or secreting by the mortgagor or vendee in possession under conditional sale, mortgage or lease agreement.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this insurance shall not cease as to the interest of Fruehauf Trailer Company until five days after notice has been received by it at its address as shown on this policy.

"Whenever this company shall pay to Fruehauf Trailer Company any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payments shall be made and to all securities held as collateral to the debt, but no subrogation shall impair the right of Fruehauf Trailer Company to recover the full amount of its claim."

But notwithstanding the clear provisions of the loss payable clause that the policy shall not be invalidated "by any action or neglect of the assured," defendant contends that Fruehauf cannot recover under the policy because the insurance coverage was suspended as to it as well as to the insured, due to the execution of the chattel mortgages by Riteway.

■ The law in Minnesota, and indeed almost universally throughout the United States, is well settled that where such a mortgage loss payable clause (generally labeled "union mortgage clause") is present, its provisions create an independent contract between the insurance company and the mortgagee which is applied exactly in the manner expressed in the clause. Magoun v. Firemens Fund Ins. Co., 86 Minn. 486, 91 N.W. 5; Allen v. St. Paul F. and M. Ins. Co., 167 Minn. 146, 208 N.W. 816; H. F. Sheperdson Co. v. Central Fire Ins. Co., 220 Minn. 401, 19 N.W.2d 772. This rule is stated clearly in Syndicate Ins. Co. v. Bohn, 8 Cir., 65 F. 165, at page 178, 27 L.R.A. 614:

"Our conclusion is that the effect of the union mortgage clause, when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity

solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause."

In the present case, the coverage under the policy as to Riteway with respect to this trailer was suspended due to the act or neglect of Riteway in placing encumbrances upon it without notifying the insurer of this fact and obtaining its consent thereto. But to urge that suspension of the insurance coverage invalidates the insurance as to Fruehauf's interest within the meaning of the union mortgage clause would destroy completely the very purpose of the independent contract of insurance between the company and the plaintiff. Webster's New International dictionary defines "invalidate" as: "to render invalid; to weaken or lessen the force of; to destroy the authority of; to render of no force or effect; to overthrow." In Queen Ins. Co. v. People's Union Sav. Bank, 3 Cir., 50 F.2d 63, the union mortgage clause provided:

"* * * 'Loss or damage, if any, under this policy, shall be payable to Peoples Union Savings Bank of Pittston, Pa., as first mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, * * *.' "

There was another provision in the policy which provided for pro rata division of any loss if the insured should take out any additional insurance on the property. The insured had taken out additional insurance without the mortgagee's knowledge. Defendant contended that it was only liable for a pro rata share of the loss as to the mortgagee. After stating the general rule as to the effect of a union mortgage clause, the court, at page 64, quoted with approval the case of Eddy v. London Assur. Corp., 143 N.Y. 311, 38 N.E. 307, 25 L.R.A. 686, wherein the court stated:

" 'Where the company agreed that the mortgagee's insurance should not be "invalidated" by any act or neglect of the owner of the property it was not intended to limit the application of that word to a case where the whole policy would otherwise be rendered invalid. The plain and obvious meaning of the language is that the insurance of the mortgagee should not be affected or in any wise impaired or lessened by any act or neglect of the owner.' "

But notwithstanding the convincing import of the clear weight of authority, defendant assumes to indulge in some subtle reasoning to the effect that the exclusion clause is a substantive and integral part of the insurance agreement delimiting and defining the scope of the policy and binding upon both the insured and the loss payee. It offers the specious argument that Fruehauf must bear the burden of accepting insurance with a limited coverage because that is the type of insurance which it accepted. It asserts that plaintiff should have requested a deletion from the policy of the exclusion clause or demanded a form of insurance providing for coverage as to it in the event of "suspension of coverage." However, it cannot be gainsaid that Fruehauf under the loss payable clause obtained a new and separate contract of insurance when the policy was issued on February 20, 1952. That contract thereafter could not be impaired or affected by any act or neglect of Riteway. The subsequent suspension of the insurance as to Riteway was caused by the latter's neglect to declare or describe in the policy of insurance the existence of the new encumbrances. If Riteway had appropriately informed the insurance company as to the existence of these mortgages, there would have been no suspension of coverage. It seems indubitably clear, therefore, that such a suspension of the insurance directly caused by the neglect of Riteway could not invalidate the sep-

arate contract of coverage which existed between the insurer and the loss payee. Moreover, it seems directly in violence of the terms of the loss payable clause to contend that, although the insurance contract remained in force as to the plaintiff, the obligation to pay any loss thereunder was notwithstanding suspended by the acts of Riteway.

After giving due consideration to all of the defendant's contentions, the impelling fact remains that, although the insurance was suspended as to Riteway, who by its acts invalidated the insurance contract as to it, the loss payable clause was expressly designed to leave the contract of insurance between plaintiff and the insurance company unimpaired and unaffected by such acts of neglect. The Court is merely applying common sense in the construction of a loss payable clause in harmony with the liberal rule announced in the Minnesota decisions so that this defendant cannot again "escape liability for a loss which as a matter of good conscience and fair dealing it should have paid." Riteway Carriers v. Stuyvesant Ins. Co., 8 Cir., 213 F.2d 576, 581.

## II.

After the collision, the damaged trailer was brought back to the yards of the Riteway Company and stored there until on or about April 9, 1953. It appears that an agent for plaintiff, a week or so before April 7, 1953, requested the Bishop Towing Company to go to the Riteway premises and tow the damaged trailer back to Fruehauf's yard. Some telephone conversation between Riteway, its attorney, and Fruehauf took place as to the right of Fruehauf to take possession, and before this conversation had terminated, the driver for the towing company left. On April 9, 1953, the Bishop Towing Company apparently returned to Riteway's yard and hauled the truck to Fruehauf's yard. Fruehauf contends that it did not again order the trailer to be picked up, and on the day of delivery, it sent Riteway a letter stating this and further stating,

"* * * We are not desirous of executing our repossession rights, under our Conditional Sales Contract, for the above trailer, at this time.

"Therefore, this unit is in our possession merely for storage purposes, and your disposal."

On April 22, 1953, Fruehauf again wrote Riteway, and stated,

"We have no intention of terminating the contract by repossession. * * *

"* * * As we advised you, we are merely holding the wrecked trailer as stored with us but not repossessed as upon a cancellation of the conditional sale contract, which continues in full force."

Other language in that letter fairly shows that plaintiff intended to foreclose its lien on the trailer if it was unable to collect the balance of its contract price from the defendant insurance company. And thereafter, on June 26, 1953, plaintiff brought an action against Riteway to foreclose its equitable vendor's lien on the damaged trailer.

The Minnesota courts have repeatedly stated that when the purchaser under a conditional sales contract is in default, the seller can (1) reclaim the property; (2) treat the sale as absolute and collect the debt; or (3) sue to foreclose his equitable vendor's lien. Holmes v. Schnedler, 176 Minn. 483, 223 N.W. 908; Ahlers v. Jones, 193 Minn. 544, 259 N.W. 397; National Cash Register Co. v. Ness, 204 Minn. 148, 282 N.W. 827; C. I. T. Corporation v. Cords, 198 Minn. 337, 269 N.W. 825. Although a suit to foreclose the equitable lien of a vendor may be rarely pursued in Minnesota, it seems clear that the Ness case holds that that remedy does exist. Defendant, however, contends that plaintiff has chosen to pursue the first remedy set out above. Plaintiff takes the position that it has chosen to foreclose its vendor's lien. Admittedly, there is a dispute in the evidence as to whether or not this trailer was delivered to Fruehauf in response to

its original instructions or whether it may be assumed that Riteway for some reason decided to have the trailer delivered to Fruehauf by the Bishop Company and so instructed the latter subsequent to April 7, 1953. In any event, it seems reasonable to find that plaintiff did not elect to reclaim the property and to terminate the conditional sales contract. Here, we, have written evidence wherein the seller took prompt action in notifying the buyer that its possession of the property was merely for the purpose of·foreclosing the seller's lien and not with the intent to terminate the conditional sales contract. Plaintiff's letters to Riteway under· date of April 9th and 22nd were adequate and timely notice that it did not have possession of the trailer for the purpose of reclaiming it in satisfaction of its contract, but that it held the wrecked trailer for the purpose of foreclosing its vendor's lien if it should deem it necessary so to do. Plaintiff's conduct, therefore, is persuasive that its possession of this trailer did not come about by way of an intent to reclaim it in satisfaction of its contract.·

### III.

Defendant's contention that plaintiff has failed to prove the amount of the debt due on trailer FW 54304 is bottomed upon the two modifications of the original sales contract which provided that the vendee could make a single stipulated monthly payment on the nine contracts outstanding. It should be noted that the nine conditional sales contracts as originally entered into were separate instruments and executed on separate dates. On the reverse side of each sales contract was set forth the schedule of monthly payments to be made on each trailer. At the request of the vendee, the schedule of payments for the unpaid balance payable under the several contracts was first changed on November 28, 1951. In this modification, the unpaid balance was stated as one lump sum. The modification agreement further provided that the vendee desired "to have the schedule for payments for said un-

paid balance changed and modified," and further provided "except as hereby modified and changed, all the terms, covenants, and conditions of said sales contracts shall be and remain in full force and effect." The same provisions are noted in the second modification dated May 31, 1952. It seems apparent that the only purpose of the modification was to simplify for the convenience of the vendee the payment of the amounts due on the nine outstanding contracts. The covenants, conditions and terms of these contracts were not changed, and it seems obvious under these circumstances that if the vendee had tendered the balance due on any contract, Fruehauf would have had to satisfy that particular contract and deliver title. There is an absence of any showing that the parties merely by arranging a different method of payments intended to modify the nine contracts into one entire contract not thereafter severable. On the same date of the second modification agreement, the original vendee transferred its equity in these contracts to Riteway; and in the transfer the transferee expressly assumed the liability of the transferor under each of the separate contracts. Copies of the nine separate contracts, as well as the modification contracts, were attached to the transfer document. One cannot, therefore, spell out of the modification contract anything more than the intent of the parties to provide a more simplified method of making payments under the nine outstanding contracts. The modification agreement must be considered in connection with the nine outstanding contracts which contain the covenants of the parties with respect to each trailer. Under the arrangement between the parties as disclosed by the modification contracts, there would be no difficulty in apportioning the lump sum into equal pro rata monthly payments as to each trailer. If any one or all of the nine trailers had been repossessed by Fruehauf, it cannot be denied that Riteway would have had the right to redeem any one or all of the trailers thus repossessed.

■ It may be noted that when plaintiff in accordance with the provisions of the conditional sales contract covering trailer FW 54304 on January 1, 1953, declared the remaining balance of $5,478.-92 to be due, Riteway did not dispute the correctness of this allocation of the payments made under the modification agreement. And it is not denied that the sum of $5,478.92 represents a pro rata application on trailer FW 54304 of the lump sum amounts paid on these nine contracts. And as to defendant's contention that the repossession of any or all of the remaining trailers covered by the conditional sales contract resulted in any additional credits to be applied to the contract covering trailer FW 54304, there is an absence of any evidence to support that conclusion. The record is entirely silent as to what the value of the other eight trailers may have been when repossessed.

### IV.

■ Finally, defendant asserts that, in any event, the reasonable repairs necessary to restore the damaged trailer to its former condition did not exceed the sum of $2,131.40. In this regard, defendant relies upon defendant's Exhibit A, which purports to be an estimate of repair on trailer FW 54304 dated September 2, 1952. Admittedly, this estimate purports to cover certain repairs which had to be made to the trailer in question. But the testimony herein is persuasive that the estimate refers to an accident to this trailer other than the collision which took place in the State of Utah. It is significant that the damaged trailer was available for inspection at the Fruehauf yards at the time of this trial. Defendant did not seek to avail itself of an appraisal so as to support the data reflected in defendant's Exhibit A. The employee who prepared the document testified that he compiled the estimate of contemplated repairs, but that the damage resulted from an occurrence other than the collision in Utah. In view of the direct and convincing testimony given by the one who made the estimate of repairs and the other testimony as to the fair and reasonable market value of the trailer prior to the accident and the fair market value after the accident, the Court is convinced that there is no possible merit to defendant's contention that the so-called estimate, defendant's Exhibit A, has any relevance herein.

■ The testimony indicates that this trailer was reasonably worth from $7,-800 to $8,000 before the accident, and from $750 to $800 after the accident. It is fair to find, therefore, that the damage to the trailer approximated $7,000. The amount of the insurance herein as to this trailer is $7,000, but it must be reduced to $6,500 after giving the defendant due credit for the $500 deduction as provided in the policy. The balance due Fruehauf on the conditional sales contract at the time of the accident was $5,657.70. However, subsequent payments were made in accordance with the modification agreement so that on January 1, 1953, when the remaining balance on the contract was declared due, the amount owing on this trailer was $5,478.92. The mortgage clause in the policy insured Fruehauf as to this trailer as its interest might appear. Under all the circumstances, the Court finds that plaintiff is entitled to interest on the balance due at the rate of six per cent, and as to the defendant company this interest should commence from the date that this action was commenced, to wit, on May 6, 1953. Judgment, therefore, should be entered in favor of the plaintiff in the amount of $5,478.92, with interest as indicated, together with its costs and disbursements.

The question of subrogation and defendant's right therein and the extent thereof, as well as defendant's claim as third-party plaintiff against Riteway, may be deferred, and the Court retains jurisdiction for that purpose. It may be noted that the right of subrogation only arises after payment of the insurance under the policy.

Findings of fact and conclusions of law consistent herewith may be presented upon ten days' notice.