**FARMERS UNION OIL COMPANY OF DEVILS LAKE, a Corporation, Appellant,**

v.

**CENTRAL SURETY & INSURANCE CORPORATION and Elmer H. Stenson, Appellees.**

No. 15810.

United States Court of Appeals Eighth Circuit.

June 19, 1958.

Clyde Duffy, Devils Lake, N. D. (John C. Haugland and Duffy & Haugland, Devils Lake, N. D., were with him on the brief), for appellant.

John T. Traynor, Devils Lake, N. D. (Traynor & Traynor, Devils Lake, N. D., was with him on the brief), for appellee Central Surety & Insurance Corp.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

This action involves the question of coverage under a comprehensive liability insurance policy issued by appellee Central Surety & Insurance Corporation to appellant which was in full force and effect at the times here involved. We shall refer to the parties as they were designated in the trial court.

Plaintiff is a corporation engaged in the business of selling and distributing gasoline and other products at Devils Lake, North Dakota. On March 8, 1954, plaintiff in the due course of its business transported by truck certain gasoline for delivery at the farm of one Howard Jabs, some twenty miles distant from plaintiff's premises and place of business. While the truck was standing adjacent to the Jabs' gasoline tank and while the same was being unloaded, by reason of the fact that the brakes had not been firmly set or the wheels blocked, the truck rolled down an incline, striking the house on the farm and causing the gasoline from the truck to pour into the house where it was ignited, resulting in an explosion and fire. As a result of such explosion and fire Jane Jabs, wife of Howard Jabs, was severely burned and injured, a daughter, Marilyn Jabs, suffered burns, a son, Duane Jabs, was burned to death and the farm house was

totally destroyed. For the property damage, death and injuries resulting from the accident various actions for damages were brought against plaintiff, of which defendant was notified.

In addition to the comprehensive liability policy heretofore referred to defendant had issued to plaintiff a liability insurance policy referred to in the record as an automobile policy. This policy was also in full force and effect at the time of the accident. Defendant accepted defense of the actions brought against the plaintiff under its automobile policy but denied liability under its comprehensive policy. The claims were all ultimately settled for $93,500, of which defendant paid $57,000, the limit of its liability under its automobile policy, the balance of the settlement being paid by plaintiff. In the present action plaintiff seeks to recover $36,500 under the provisions of the comprehensive liability policy, the amount contributed by it in settlement of the asserted claims.

Defendant denied liability on the ground that the loss was not within the coverage of the so-called comprehensive liability policy, and further that the amount of the obligation of plaintiff to the various claimants had not been finally determined either by judgment against plaintiff after actual trial or by written agreement between plaintiff, the claimants, and the defendant, prior to the institution of this action, as required by the provisions of the comprehensive liability policy.

The action was tried to the court without a jury and submitted on a stipulation of facts, certain written exhibits, and oral testimony. On the stipulation of facts, exhibits, and oral evidence submitted, the court entered findings of fact, finding among other things:

"IX.

"That the comprehensive liability policy did not apply to the accident at the Howard Jabs farm because this accident comes within the purview of 'exclusion (b)' of said policy which is as follows:

" 'This policy does not apply except with respect to operations performed by independent contractors, to watercraft while away from premises owned, rented or controlled by the named Insured, automobiles while away from such premises or the ways immediately adjoining, or aircraft, or the loading or unloading thereof.' "

It also found:

"X.

"That the plaintiff and the defendant Central Surety and Insurance Corporation entered into an agreement which is Exhibit #8 regarding the property damage claim of Howard Jabs. That the said Howard Jabs did not join in this agreement. That the plaintiff has failed to comply with condition number eleven of the comprehensive liability policy which is in part as follows:

" 'Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company.' "

The court concluded as a matter of law that plaintiff take nothing by its said action and that defendant recover its costs and disbursements.

From the judgment entered pursuant to the court's findings of fact and conclusions of law dismissing plaintiff's action on its merits, plaintiff prosecutes this appeal seeking reversal on substantially the following grounds: (1) that the court erred in entering finding of fact number nine to the effect that the comprehensive liability policy did not apply because the accident came within the purview of "exclusion (b)" of the policy, (2) that the court erred in failing to find that the defendant was liable un-

der the products hazard clause of the policy, and (3) that the court erred in making finding of fact number ten to the effect that the plaintiff had failed to comply with a condition precedent to the right to institute the action, in that the amount of the defendant's obligation to pay had not been finally determined, either by judgment against the plaintiff after actual trial or by written agreement of the plaintiff, the claimants, and the defendant.

It is not claimed that the court erroneously set forth the provisions of the comprehensive liability policy. In fact, there is no conflict in the evidence, but it is the contention of plaintiff that notwithstanding the correctness of the findings the court erred in concluding that these provisions of the policy precluded recovery. In support of this contention plaintiff relies upon a paragraph in the declarations made a part of the policy reading as follows:

> "The schedules disclose all hazards insured hereunder known to exist at the effective date of this policy, except as herein stated: No exceptions."

This paragraph relied upon by plaintiff is lifted from its context and sought to be construed without reference to the provisions of the policy as a whole. Even so considered it is to be noted that this provision obligates the insurance company to pay for "all hazards *insured hereunder*". (Emphasis supplied.) The argument begs the question and of necessity assumes that the hazards for which recovery is sought were in fact "insured hereunder". Whether or not these hazards were so insured can only be determined by considering all the provisions of the policy as applied to the proven facts. If this quoted paragraph is replaced in proper context it reads as follows:

> "The schedules disclose all hazards insured hereunder known to exist at the effective date of this policy, except as herein stated: No Exceptions.

\*    \*    \*    \*    \*    \*

> "Central Surety and Insurance Corporation Does Hereby Agree with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and of the statements contained in the declarations *and subject to the limits of liability, exclusions, conditions and other terms of this policy:* (Emphasis supplied.)

> "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person.

> "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof."

■■ In urging its contention that the paragraph quoted by plaintiff entitles it to recover herein, it seeks to invoke the rule that the policy should be most strongly construed against the insurance company which prepared such policy. The rule, however, is only applicable where the contract is ambiguous, uncertain, or of doubtful meaning. Campbell v. American Farmers Mutual Insurance Co., 8 Cir., 238 F.2d 284; Ismert-Hincke Milling Co. v. American Credit Indem. Co., 8 Cir., 224 F.2d 538; Fidelity & Casualty Company v. Bank of Altenburg, 8 Cir., 216 F.2d 294; Riteway Carriers v. Stuyvesant Ins. Co., 8 Cir., 213 F.2d 576; Automobile Ins. Co. of Hartford, Conn. v. Denny, 8 Cir., 206 F.2d 401, 40 A.L.R.2d 865; Hartford Acc. & Indem. Co. v. Federal Deposit Ins. Corp., 8 Cir., 204 F.2d 933. We are of the view that there are no ambiguities in the policy and plaintiff's counsel have called our attention to none.

It is contended that the facts do not bring this case within "exclusion (b)". Even a cursory reading of "exclusion

(b)" discloses that the accident resulting in the damages sought to be recovered was excluded. The accident did not occur on premises owned, rented or controlled by plaintiff, but upon premises owned, rented or controlled by Howard Jabs, some twenty miles distant from plaintiff's premises and place of business. As to this question, quite aside from the physical facts, it is to be noted that the Chairman of plaintiff's board of directors testified that the Jabs' farm was owned and controlled by Howard Jabs and that plaintiff did not own, rent or control it. Again, the accident involved an automobile operated away from the premises owned, rented or controlled by plaintiff and the ways immediately adjoining, and it may also be observed that the accident occurred while the truck was being unloaded. These facts bring the accident squarely within the inhibitions contained in the exclusion clause.

It is contended, however, that the property where the accident happened was at the time of the accident, within the meaning of the exclusion clause of the policy, under the control of the plaintiff. We cannot agree. Plaintiff's witness thought the property was under the control of Howard Jabs. It was twenty miles distant from plaintiff's premises and place of business. A somewhat similar contention was urged in Pickens v. Maryland Casualty Co., 141 Neb. 105, 2 N.W.2d 593 and in Sam Finley, Inc. v. Standard Accident Insurance Co., Tenn. App., 295 S.W.2d 819. In Pickens v. Maryland Casualty Co., supra [141 Neb. 105, 2 N.W.2d 595], the Supreme Court of Nebraska said:

"A proper interpretation of the applicable provisions of the policy necessarily requires an understanding of the meaning of the words 'upon premises owned by or under the control of the assured, or on the public ways immediately adjacent thereto.' Clearly, the accident which was the source of this litigation did not occur upon the premises owned by or under the control of the assured. It took place more than eight miles from the place of defendant's quarrying business on a public highway completely disconnected from plaintiff's place of work."

In Sam Finley, Inc., v. Standard Accident Insurance Co., supra [295 S.W.2d 822], it is said, inter alia:

"It seems to be conceded that Tennessee Central Railroad owned the premises where the accident occurred, therefore, as is argued by counsel for defendant, the question of ownership is settled and defendant would not be liable as an owner of the premises.

"Then again, there is nothing in the record to show that the premises on which the accident occurred were leased or rented by the complainant at the time of the accident. Therefore, under the aforesaid provisions of the policy, liability of the defendant must be based on the contention that the complainant 'controlled' the premises where the accident occurred, and this is the main question involved in this suit.

"The record shows, without dispute, that there were other premises in Montgomery County, which were owned, rented or controlled by the complainant at the time in question, as, for example, an asphalt plant and stone quarry that was operated by the complainant, and situated about eight miles southeast of Clarksville. It was to storage tanks located on these premises that the asphalt, which was being unloaded at the time of the accident, was to be transported.

\*  \*  \*  \*  \*  \*

"But it is urged by counsel for complainant that the area, or the point at which the accident happened, was under the control of complainant for the purposes of the policy in question by reason of the fact, (1) that trucks belonging to complainant went there several times a day, (2) that complainant kept a tank car heater and booster

there to be used in unloading railroad tank cars, (3) that workmen of complainant started to work from this point.

"We must agree with counsel for defendant that these circumstances do not make out a case of 'control' under the terms of the policy. Such an assembly point for the workmen of a highway contractor might have been at the Court House or the Post Office or at some other place which would not, necessarily, have given him control of that place, and the fact of his maintaining a pump, or other equipment at that place would not, necessarily, have given him 'control' of the property, as contemplated by the insurance contract.

"We are of opinion that there is no substance in the contention that the language of the policy in question is ambiguous. We think it is perfectly susceptible of clear understanding."

The authorities cited and relied upon by plaintiff on this question are readily distinguishable in their facts and hence do not sustain plaintiff's contention that under the facts in this case the premises where the accident happened were under the control of plaintiff.

The contention that defendant was liable under the so-called products hazard clause of the policy need only be given passing attention. The term "products hazard" as used in the policy is defined as follows:

"(1) The handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named Insured, other than equipment rented to or located for use of others but not sold, if the occurrence arises after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured or on premises for which the classification stated in Division (a) of the declarations or

in the Company's manual excludes any part of the foregoing;

"(2) operations, if the occurrence arises after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the Insured, except (a) pick-up and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operations for which the classification stated in Division (a) of the declarations or in the Company's manual specifically includes completed operations; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement."

Manifestly, this clause under the admitted facts creates no liability under the terms of the policy. First, plaintiff had not relinquished possession of the product; second, the operations had not been completed when the accident occurred; third, the accident in fact occurred during unloading. In this connection it is to be observed that "exclusion (b)" provides that the policy here involved does not apply to "automobiles while away from such premises or the ways immediately adjoining, or aircraft, or the loading or unloading thereof". The damage here involved did not result because of any condition or defect of the products delivered but by reason of the negligent acts of plaintiff. It should be noted too that the court made no finding with reference to this contention and it does not appear from the record that the matter was urged in the trial court. We think plaintiff's contention on this phase of the case is wholly without merit.

It is finally urged that the court erred in concluding that the amount of defendant's obligation to pay had not been finally determined, either by judgment against plaintiff after actual trial or by written agreement of the plaintiff, the claimants, and the defendant, as required

by the terms of the policy as a condition precedent to bringing the action. This does not go to the merits of plaintiff's action but simply to a matter of procedure.

Having decided that plaintiff's claim was without merit, the conclusion of the trial court that it had not performed the conditions precedent entitling it to bring the action cannot now be material nor prejudicial. In these circumstances a decision of this issue cannot affect the result and we therefore pretermit consideration of the issue as inappropriate and unnecessary. The judgment appealed from is therefore affirmed.